THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLIFTON ELY, Defendant-Appellant.

Fourth District    No. 17645

Opinion filed June 15, 1982.

Daniel D. Yuhas and James G. Woodward, both of State Appellate Defender's Office, of Springfield, for appellant.

Anthony B. Cameron, State's Attorney, of Quincy (Robert J. Biderman and James K. Horstman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LONDRIGAN delivered the opinion of the court:

Defendant was charged with two counts of home invasion, two counts of armed robbery, three counts of armed violence, and one count of burglary. These charges arose from an incident which occurred on June 30, 1981, in Quincy. At his arraignment on August 5, 1981, defendant entered pleas of not guilty on all counts.

At a hearing held on September 4, 1981, the trial court was advised that the defendant would, as part of a plea agreement with the State's Attorney's office, enter pleas of guilty to one count of armed robbery and one count of armed violence in exchange for the State's agreement to dismiss the remaining six counts. The court was told that the plea agreement did not involve any promises regarding the sentence to be imposed. The trial court admonished the defendant pursuant to the requirements of Supreme Court Rule 402 (85 Ill. 2d R. 402) before accepting the defendant's offer to plead guilty to the two counts in question.

The trial court was provided with a factual basis for the pleas which tended to establish that the defendant and Carl Griggsby forced their way into the home of the victims, a doctor and his wife, at gunpoint on the evening of June 30, 1981, and proceeded to tie up the victims and loot their residence. In summarizing the testimony that would have been presented, the State's Attorney stated that the wife would testify that she was sexually assaulted by the defendant before he left her residence. The State's Attorney also noted that defendant had not been charged with committing rape in connection with this occurrence. Defendant's attorney objected to the reference to the alleged sexual assault of the wife because "there is no charge of that nature having been made at any time with reference to the facts we are here about." The trial court overruled defendant's objection. The defendant persisted in his request to change his plea from not guilty to guilty. The trial court entered judgments of conviction on those two counts.

The sentencing hearing was held on October 16, 1981. A presentence report was prepared prior to the hearing. When the court inquired as to whether there were any alterations or corrections that should be made in the report, defendant's counsel objected to summaries of police department reports of the incident that were contained in the presentence report. Those summaries contain statements of the wife describing the

incident; it also included her references to a sexual assault having been committed by the defendant upon her. Defendant objected on the grounds that rape was never charged and that to consider evidence of that offense at the sentencing hearing would be to punish the defendant for an offense with which he has never been charged.

The trial court overruled defendant's objection, stating that it considered it important in sentencing to know "as many of the facts and circumstances as possible."

The prosecution then began presenting its evidence in aggravation, which consisted primarily of the testimony of the victims. The wife testified that she and her husband had a late dinner on the evening of June 30, 1981. After dinner she went into the backyard to feed the dog. She stated that two masked black intruders jumped her outside her home and subdued her by covering her mouth and nose. They told her repeatedly that they would kill her if she failed to cooperate. Defendant and Griggsby beat her over the head and marched her into the house with a knife at her back and a gun at her head. Inside the house, defendant bound the doctor with electrical wire. The doctor asked defendant to keep the bonds loose because damage would result to his hands if the bonds were kept tight. He told defendant that he needed his hands because he was a surgeon. Defendant responded by tightening the bonds. The doctor also asked defendant to be careful with his wife because she had viral meningitis and a head injury would be especially dangerous to her. Defendant responded by striking the wife repeatedly in the head until she dropped to the floor.

After defendant and Griggsby went through the house searching for valuables, they returned to where the doctor lay bound and then tied up the wife. Defendant demanded to know the location of the victims' safe. When the doctor stated that they had no safe, defendant repeatedly struck the wife in the head and face and stepped on the doctor's throat. Defendant then announced that he would rape the wife. He had Griggsby cut the wire which had tied her legs together. Defendant removed her underpants and engaged in forcible sexual intercourse with her. During the assault, defendant said to the doctor, "Nothing you can do about it. How does it feel?" and, "You are really going to have a heart attack." When he finished sexually assaulting the wife, defendant wiped his penis on the doctor's head and struck him. At the time of the offenses, the doctor was 65 years old and his wife was approximately the same age.

As a result of the sexual assault, the wife sustained a tear in her vagina which bled for a week after the offense. She also suffered nerve damage to her nose and experienced continuing headaches as a result of the blows she received about the face and head. The doctor suffers an apparent permanent numbness in the top half of his index finger as a result of his hands having been bound too tightly. Although the damage does not

preclude his work as a surgeon, he stated that he is handicapped as a result.

Both the doctor and his wife came to this country as refugees. They fled the Soviet Union in the early 1920s and fled Europe after World War II. Both viewed this incident as the most horrible experience of their lives. The doctor testified, "The physical pain is nothing to the emotional and mental devastation to all of us. I really feel I would be better off dead."

No evidence in mitigation was presented in behalf of the defendant. After hearing arguments of counsel, the trial court reviewed the statutory factors in mitigation and aggravation. The court found that the offenses were accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. The court further observed that the armed robbery "is probably the most repulsive, diabolic, cruel and inhumane armed robbery that has been committed in this country." The court noted that not only were these offenses ones that qualified for an extended term based on the brutal and heinous behavior accompanying the offense, but that the court could imagine no more heinous and brutal behavior associated with an armed robbery than that which was present in the instant case. The court sentenced the defendant to two concurrent extended terms of 60 years' imprisonment for the convictions of armed robbery and armed violence.

Defendant moved to vacate the guilty pleas on November 12, 1981. The defendant alleged that his sentence was improper because the trial court was influenced by evidence presented at the sentencing hearing regarding the sexual assault of the wife. The trial court denied the motion on December 2, 1981. The court stated that it did not consider the rape as such in sentencing the defendant, but considered it only from the standpoint of the force that had been used in the commission of the offenses charged.

Defendant presents one issue on appeal: whether the trial court erred in relying upon the characteristics of an offense not charged for the requisite finding that the offenses to which the defendant pleaded guilty were brutal and heinous.

Since the defendant's claim revolves around the factors used by the trial judge in sentencing the defendant to an extended term, we consider it important that the judge's comments regarding the nature of the offenses be set forth. Judge Dittmeyer stated:

> "We get to the question of does—do the circumstances surrounding these offenses amount to exceptionally brutal or heinous behavior indicative of wanton cruelty, because if I make a finding that those circumstances are such, then Mr. Ely is subject to an extended term of between 30 and 60 years in the penitentiary, some fixed, definite, determinated term within that range.

I have reviewed the presentence investigation report on several occasions; I have given a lot of thought to this case. This is the type of a case where a Judge must make up his own mind. He cannot look for help anywhere else. It is entirely up to him as to what his decision should be, as to what a penalty should be, keeping in mind society's best interests, the defendant's best interests, and what the impact has been on the victims.

I am well aware that the theory behind sentencing in our state is two-fold, one is rehabilitation of the defendant, the other is punishment of the defendant.

As I review the facts surrounding the offenses in this case there was extreme brutality. [The wife] was struck with a pistol by a healthy 23 year old young man struck up on her forehead, struck up on her face, struck up on her nose, and not just once, but pursuant to the testimony at least four or maybe five or six times during the entire course of this event. They were shackled, the two of them, with cords, both their legs and their arms, and I am not considering Mr. Ely's conduct as rape as such, but only considering it from the standpoint of force, and it obviously was a very forcible procedure that he performed. The vagina of [the wife's] was torn; it bled; it necessitated medical attention. That is force. The doctor, due to the force and the tightness of the restraints that were applied to his right hand caused him some numbness that still persists in his right index finger. He's a skilled surgeon and although he is performing surgery he says that still causes him some problems, and since three and a half months have elapsed since the date of that trauma he and his consulting neurologist are now concerned as to whether or not that will not be a residual or permanent disability.

[The wife], due to the blows on her head, and she had had severe meningitis which had substantially receded, but due to the blows on her head has headaches, and as her doctor says in his report the prognosis is guarded, that not enough time has elapsed to determine whether there will be permanent injury to her as a result of those blows that aggravated her pre-existing condition.

I have been associated with the law in one form or another for perhaps 35 years—almost that long—either as a practicing lawyer or as a Judge, and I have some acquaintanceship or familiarity with many cases that have occurred here in Adams County, and to me this is probably the most repulsive, diabolic, cruel and inhumane armed robbery that has been committed in this county. There was a viciousness displayed in this case, great brutality displayed in this

case, and the Court for this record is going to specifically find that both of these felonies were accompanied by exceptionally brutal and not or, but and heinous behavior indicative of wanton cruelty. And, therefore, Mr. Ely, you are subject to the extended term."

Section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2) allows the trial judge to sentence a defendant to an extended term if one of the aggravating factors set forth in section 5—5—3.2(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)) is present. Section 5—5—3.2(b) provides that an adult offender is eligible for an extended term under section 5—8—2 if he was convicted of a felony and the offense "was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

Our supreme court recently considered the issue of whether a trial judge may, in imposing an extended term sentence, consider evidence of misconduct by the defendant which did not result in prosecution and conviction in *People v. LaPointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344. In *LaPointe*, defendant pleaded guilty to murder and was sentenced to life in prison without parole. On appeal, defendant contended that the trial court, in sentencing him, erred by considering testimony that the defendant had solicited another to commit a crime, since no prosecution or conviction resulted from the alleged solicitation.

■■■ The court rejected defendant's argument. The court distinguished the types of evidence that can be considered by a judge in passing sentence from the evidence which is admissible at trial. A trial judge, in determining the nature and degree of punishment, is not confined to the evidence presented at trial. He may search anywhere, within reasonable bounds, for facts which aid him in crafting a proper sentence. Evidence of criminal conduct which has not been the subject of prosecution and conviction is admissible at the sentencing hearing; however, the trial judge must exercise care to insure that the information is relevant and accurate. See *People v. Adkins* (1968), 41 Ill. 2d 297, 242 N.E.2d 258.

" ' "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " (*People v. Monroe* (1977), 66 Ill. 2d 317, 322, 362 N.E.2d 295, 297.) The testimony of the victims regarding the sexual assault which accompanied the offenses charged was relevant to the question of whether the offense was accompanied by extremely brutal and heinous behavior indicative of wanton cruelty. We reject defendant's claim that the sexual assault of the wife occurred after the offenses with which defendant was charged had been completed. The sexual assault occurred

at the same place and time as the offenses charged. It was but one violent act in a series of violent acts committed by the defendant in the course of his armed robbery of the victims.

Defendant relies on *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520, for the proposition that wanton cruelty associated with one of the defendant's convictions may not serve as the basis for an extended term for another conviction which does not demonstrate the same character. Defendant's reading of *Evans* is not quite correct. *Evans* held that an extended term is permissible only if the most serious offense of which the defendant is convicted is accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. In any event, *Evans* is inapplicable to the case at bar because the brutal and heinous behavior necessary for the imposition of an extended term accompanied both the armed robbery and armed violence offenses.

Moreover, even if we were to agree with the defendant's position that the trial court erred in considering the sexual assault in determining whether the offenses were accompanied by brutal and heinous conduct, any error was harmless. In addition to sexually assaulting the wife in front of her husband, defendant and his partner beat her about the head and face even after they were informed that she had viral meningitis and that a head injury could be extremely dangerous. When the doctor asked that the electrical wire binding his hands be loosened because he was a surgeon and feared injury to his hands, defendant responded by *tightening* the bonds. Throughout the robbery, defendant shouted vulgarities at the victims and seemingly took a great deal of satisfaction in terrorizing them.

The entire incident on the night of June 30, 1981, was characterized by great brutality and cruelty by the defendant towards his victims. These acts were despicable and reflect a complete lack of humanity and common decency. Even without the sexual assault, the record fully supports Judge Dittmeyer's decision to impose an extended term upon the defendant. The sentence imposed by the trial court did not amount to an abuse of discretion.

The judgment of the circuit court of Adams County is affirmed.

Affirmed.

GREEN, P. J., and MILLS, J., concur.