THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES WRIGHT, Defendant-Appellant.

Second District No. 2—86—0327

Opinion filed October 15, 1987.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of Elgin, and John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of Ottawa, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Following a bench trial, defendant, Charles Wright, was convicted on two counts of murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(3)). Defendant appeals his conviction for murder and his sentence of natural life imprisonment, contending: (1) that the trial court erred in denying defendant's motion to suppress his July 23, 1985, statement to the police; (2) that defendant's January 2, 1986, handwritten confession and ensuing statement to police, after defendant had been appointed counsel, should have been suppressed; and (3) that defendant's term of natural life imprisonment was improper.

The evidence adduced at trial showed that on the morning of July 18, 1985, the body of Florence Dobson, 71 years of age, was found in her rural farmhouse located on Forrest Preserve Road in Winnebago County. Mrs. Dobson, a widow, resided alone. Her body bore numerous chop wounds from a sharp, heavy instrument in the head, neck, and trunk areas. The examining pathologist testified that the body bore evidence of more than 15 separate chop wounds.

Winnebago County sheriff's police arrested the defendant after it determined that he and codefendant, Frank Fernandez, had been in the area of the homicide and were known to have possessed items stolen from the victim's house during the course of the crime. At the time of defendant's arrest, officers found in his apartment the television set stolen from the victim. Karen Darling, the defendant's girlfriend, testified to defendant's possession of a stereo cassette player "boom box" immediately following the homicide. Darling stated that

defendant took the boom box to a home in rural Winnebago County where he sold it for a quantity of marijuana. The boom box was recovered by police and identified by the victim's son as belonging to the victim.

Following the defendant's arrest, he furnished a written statement to police on July 23, 1985, admitting participation in the burglary but blaming Fernandez for inflicting the fatal injuries to Mrs. Dobson. Five months later, on January 2, 1986, the defendant summoned Detective Richard Sweet of the sheriff's department and gave him a handwritten signed confession in which defendant admitted he was responsible for killing Mrs. Dobson. In a more detailed typewritten rendition of his handwritten statement, defendant admitted that he initially suggested to Fernandez the idea of a break-in at Mrs. Dobson's home. Defendant stated that he told Fernandez in advance of the break-in that because Mrs. Dobson knew defendant, he would have to kill her during the course of the crime. He stated, "I told Franko [Fernandez] that I was going to stab her."

In his statement defendant further admitted that, after entering Mrs. Dobson's home, he stabbed her in the back as she slept in her bed. Defendant stated that Mrs. Dobson got out of bed, and then he used a hatchet to inflict numerous chop wounds to her head and body. During the killing, Mrs. Dobson pleaded with defendant for her life. In his handwritten statement defendant stated that he killed Mrs. Dobson "just for the pleasure of killing her."

Following the attack on Mrs. Dobson, defendant related that he placed the stolen automobile, which he had driven to the premises, in a pond behind the farmhouse. A search of that automobile revealed a hatchet which, according to laboratory testimony, had traces of blood and hair consistent with the victim's hair imbedded on the blade.

At trial defendant's defense consisted of testimony by two psychiatrists, Dr. Anthony D'Souza and Dr. Donald MacLean, and a psychologist, Dr. Frederick McNelly. The testimony of the psychiatrists indicated that defendant was suffering from paranoid schizophrenia but that the disease did not render the defendant unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Dr. McNelly concluded that defendant's judgment was affected at the time of his offense, although defendant could conform his conduct to the requirements of the law.

In rebuttal, the State called Dr. Donald Pearson, a psychologist, who diagnosed the defendant as suffering from a character disorder which affected and impaired his judgment as well as impaired his thinking and his relationship with other people. Pearson opined that

at the time of the offense defendant was legally sane and did not lack the substantial capacity to appreciate the criminality of his conduct. Pearson related that out of a battery of tests he had administered to defendant, five were designed to disclose deliberate faking of intellectual insufficiencies or poor insights. From these tests Pearson concluded that defendant was fabricating a great deal of his responses.

At the conclusion of the trial, the court found defendant guilty of murder as charged in count I, intent murder, and count II, felony murder, and entered judgment on both counts. At a subsequent sentencing hearing, evidence in aggravation was presented in the form of testimony regarding defendant's involvement in a prior abduction and shooting in Rockford. In mitigation, defendant presented testimony to show that he was a loner and a follower, that he had been a drug user since 8th or 9th grade and had been high on the day of the offense, that he believed his family hated him, that he could never do anything right in his stepfather's eyes, and that he had been hospitalized in the psychiatric wing of Swedish American Hospital when he was about 12.

Following arguments by counsel, the court commented on the brutal conduct of defendant's act and the fact that the act was planned ahead of time. Although the court stated that defendant's act was the type which qualified a defendant for the death penalty, the court also stated that it had considered the mitigating factors of defendant's youth, allegedly brutal childhood, drug and alcohol abuse, and recent display of criminality to conclude that defendant should be sentenced to a term of natural life imprisonment. This appeal ensued.

■■ Defendant first contends that the trial court erred in denying his motion to suppress his July 23 statement to police because the statement was the product of police misrepresentations that the defendant's fingerprints had been found at the scene and that a codefendant had identified the defendant as having inflicted the fatal blows. It is defendant's position that his statement was obtained by trickery or deceit and that such tactics vitiate the voluntariness of the defendant's *Miranda* waiver and the voluntariness of defendant's statement itself.

The State, however, initially asserts that defendant has waived consideration of this issue because it was neither specifically included in his amended motion for a new trial nor addressed when the motion was brought before the court.

Failure to raise an issue in a written motion for a new trial constitutes a waiver of that issue, and it cannot be urged as a ground for reversal on review. (*People v. Friesland* (1985), 109 Ill. 2d 369, 374,

488 N.E.2d 261.) The purpose of the rule requiring a defendant to specify in a written motion for a new trial the errors allegedly entitling him to a new trial is to allow the trial court an opportunity to review and correct alleged errors that occurred during trial. (*People v. Camp* (1984), 128 Ill. App. 3d 223, 232, 470 N.E.2d 540.) The waiver rule, however, is not absolute, and plain errors or defects affecting substantial rights may be considered on review although they were not brought to the attention of the trial court. (*People v. Jackson* (1981), 84 Ill. 2d 350, 359, 418 N.E.2d 739; 87 Ill. 2d R. 615(a).) Before plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed. 84 Ill. 2d 350, 359, 418 N.E.2d 739.

■ Here, although the court denied defendant's motion to suppress his July 23 statement, the statement was neither admitted nor even introduced at defendant's trial. From our examination of the trial record, we find no reference to that confession. Thus, in reality, the trial proceeded as though the defendant's statement had been suppressed. In light of this fact, we conclude that even if the trial court did err in failing to suppress this confession because it was allegedly obtained by trickery or deceit, that error was not so substantial as to come within the plain error rule. Thus, such error does not constitute a ground for reversal.

As a second ground for reversal, defendant contends that his January 2, 1986, handwritten confession and ensuing statement to police should have been suppressed, as it was obtained in violation of his sixth amendment right to counsel. Defendant maintains that since counsel had been appointed at his July 24 arraignment, that counsel should have been present at the time of defendant's January 2 confession.

■ The State once again asserts defendant has waived this issue since it is noticeably absent from defendant's amended motion for a new trial. We note, however, that defendant challenged the admissibility of the handwritten confession and ensuing typewritten statement both at the preliminary hearing on the motion to suppress these statements and by objection thereto at trial. Defendant's pursuit of these devices for challenging a confession preserves consideration of the matter on appeal. (*People v. Brownell* (1984), 123 Ill. App. 3d 307, 310, 462 N.E.2d 936.) Moreover, it has been generally held that in a bench trial a post-trial motion is not necessary to preserve for review claims of error if such errors were in some manner brought to the attention of the trial court. (*People v. Indiana Harbor Belt R.R. Co.*

(1981), 102 Ill. App. 3d 811, 814, 430 N.E.2d 104; *People v. Eatherly* (1979), 78 Ill. App. 3d 777, 780, 397 N.E.2d 533.) Accordingly, we address defendant's contention that his confession was obtained in violation of his sixth amendment right to counsel.

■ In *Maine v. Moulton* (1985), 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477, the United States Supreme Court stated that once a sixth amendment right to counsel has attached and been asserted, the State has the affirmative obligation to respect and preserve the defendant's choice to seek this assistance. (474 U.S. 159, 170-71, 88 L. Ed. 2d 481, 492-93, 106 S. Ct. 477, 484-85.) At the very least, this obligation requires the State not to act in a manner which circumvents and thereby dilutes the protection afforded by the right to counsel. ( 474 U.S. 159, 170-71, 88 L. Ed. 2d 481, 492-93, 106 S. Ct. 477, 484-85.) Whether a defendant's right to counsel has been violated by State agents must be determined in light of this obligation. (474 U.S. 159, 176, 88 L. Ed. 2d 481, 496, 106 S. Ct. 477, 487.) But, knowing exploitation by the State of an opportunity to confront a defendant without counsel constitutes a violation of defendant's sixth amendment guarantee. 474 U.S. 159, 176, 88 L. Ed. 2d 481, 496, 106 S. Ct. 477, 487.

In *Moulton* a codefendant was equipped with a body wire transmitter at police request to record what was said at a meeting wherein defendant and codefendant were to plan their defense. The codefendant was instructed not to attempt to question defendant. However, during the meeting, the codefendant asked the defendant to remind him of the details of certain events. In doing so, the defendant made incriminating statements. Additional incriminating statements were elicited when the codefendant reminisced about events surrounding various thefts. Taped portions of this meeting were offered at defendant's trial. On appeal, the defendant maintained that admission of these statements to his codefendant violated his sixth amendment right to counsel. The Supreme Court agreed and found that the sixth amendment is violated when the State obtains incriminating statements by knowingly circumventing a defendant's right to have counsel present in a confrontation between the defendant and one acting as a State agent.

Likewise, in *United States v. Henry* (1980), 447 U.S. 264, 65 L. Ed. 2d 115, 100 S. Ct. 2183, the Supreme Court determined that a defendant's statements to a fellow inmate who was a paid government informant should not have been admitted at the defendant's trial. The court held that the government violated the defendant's sixth amendment right to counsel by intentionally creating a situation

likely to induce defendant to make incriminating statements without the assistance of counsel.

■ In order to establish a valid waiver of a defendant's sixth amendment right to counsel, it must be shown that a defendant intentionally relinquished or abandoned a known right or privilege. (*Brewer v. Williams* (1977), 430 U.S. 387, 404, 51 L. Ed. 2d 424, 439-40, 97 S. Ct. 1232, 1242; *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023.) In both *Moulton* and *Henry* this could not be shown. The incriminating statements made by the defendants in those cases were obtained, as the State points out, by surreptitious or secret "interrogation." Here, in the instant case, the facts established that defendant's confession was not elicited by such means.

■ Rather, the evidence at the suppression hearing showed that on January 2, 1986, Detective Richard Sweet received a message from defendant that the defendant wanted to speak with the detective. Upon meeting with the defendant, Sweet inquired whether defendant wanted to speak with him. When defendant responded affirmatively, the detective asked defendant if he understood that he had a lawyer representing him and that he possessed the right to have the lawyer present. Additionally, the detective explained that defendant did not have to talk with him. Defendant indicated that he understood everything Sweet had said but that he wanted to speak with the detective. Sweet then read defendant the *Miranda* warnings. Defendant responded that he understood his rights but that he wanted to speak with the detective. At this time, defendant handed Sweet a handwritten signed confession. Sweet read the statement and then asked defendant if he would be willing to give the detective a written statement concerning the contents of the confession. Defendant agreed and provided Sweet with a written statement. Under these facts, where the defendant requested the meeting between the detective and himself, where the detective reminded defendant of his right to have his lawyer present, where the officer read defendant his *Miranda* rights and defendant waived them, and where defendant then provided the detective with a confession that was prepared prior to any meeting with the detective, it cannot be said that defendant's incriminating statement was induced by any act on the part of the State to knowingly circumvent the defendant's right to assistance of counsel.

■ A determination regarding the voluntariness of a confession by a trial judge will not be disturbed on review unless found to be contrary to the manifest weight of the evidence. (*People v. Medina*

(1978), 71 Ill. 2d 254, 258, 375 N.E.2d 78.) In our opinion, ample evidence existed for the trial court to find that the State met its burden of proving that defendant intentionally relinquished a right known to him (*People v. Aldridge* (1980), 79 Ill. 2d 87, 93, 402 N.E.2d 176), and, therefore, the court's finding denying defendant's motion to suppress his January 2, 1986, confession was not contrary to the manifest weight of the evidence.

Nevertheless, defendant maintains that a higher standard than that required for *Miranda* waivers should be used to determine whether an individual has waived his sixth amendment right to counsel. The United States Supreme Court, however, has expressly reserved ruling on whether a higher standard should be used (see *Brewer v. Williams* (1977), 430 U.S. 387, 405-06, 51 L. Ed. 2d 424, 441, 97 S. Ct. 1232, 1243), as has the Illinois Supreme Court (see *People v. Owens* (1984), 102 Ill. 2d 88, 102-03, 464 N.E.2d 261). We, therefore, decline to rule on this matter and find that the appropriate standard in determining whether an individual has waived his sixth amendment right to counsel is "an intentional relinquishment or abandonment of a known right or privilege" standard as stated in *Brewer* and *Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019. As we concluded above, defendant intentionally and knowingly relinquished his sixth amendment right to counsel prior to providing Sweet with the January 2, 1986, statement, and, therefore, the trial court's ruling denying the defendant's motion to suppress this statement was correct.

Next, defendant seeks to have his sentence of natural life imprisonment reduced or the cause remanded for sentencing, arguing that the trial court erred in admitting unreliable evidence at the sentencing hearing, in entering judgment for two counts of murder although only one homicide occurred, in entering a straight verdict of guilty rather than a verdict of guilty but mentally ill, and in imposing an excessive sentence.

■ Defendant maintains that evidence of a prior shooting incident should not have been admitted at his sentencing hearing. We note at the outset that the State asserts that defendant has waived this issue since he did not object at the hearing to the testimony adduced from the victims of the prior shooting incident. However, defendant did object to the admission of his written statement regarding his involvement in the shooting and to the admission of the written statement of one of the victims of the incident. We believe these objections were sufficient to preserve the issue for appellate review.

■ The sentencing judge is always charged with the difficult task

of fashioning a sentence which strikes the appropriate balance between protection of society and rehabilitation of the offender. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 493, 431 N.E.2d 344; *People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.) " 'Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' " (*People v. La Pointe* (1981), 88 Ill. 2d 482, 497, 431 N.E.2d 344, quoting *Williams v. New York* (1949), 337 U.S. 241, 247, 93 L. Ed. 1337, 1342, 69 S. Ct. 1079, 1083.) In determining the nature and degree of punishment, the trial judge is not confined to the evidence presented at trial, and he may search anywhere, within reasonable bounds, for facts which aid him in crafting a proper sentence. (*People v. Ely* (1982), 107 Ill. App. 3d 102, 107, 437 N.E.2d 353.) Moreover, evidence of criminal conduct which has not been the subject of prosecution and conviction is admissible at a sentencing hearing, although the judge must exercise care to ensure that the information is relevant and accurate. 107 Ill. App. 3d 102, 107, 437 N.E.3d 353; see also *People v. Adkins* (1968), 41 Ill. 2d 297, 242 N.E.2d 258.

 The testimony regarding defendant's conduct in relation to the prior shooting incident was relevant to a determination of a proper sentence in that it bore upon defendant's natural inclination or aversion to commit crime; defendant had the opportunity to face and cross-examine the witnesses involved in the prior incident; and the accuracy of the information was not challenged at the sentencing hearing. (See *People v. La Pointe* (1981), 88 Ill. 2d 482, 498-99, 431 N.E.2d 344.) In this court defendant relies on the discrepancies between his statement regarding the shooting incident and the testimony presented at the sentencing hearing to conclude that the evidence of the shooting offense was unreliable and should have been excluded. Our review of the testimony concerning the prior shooting does not support defendant's conclusion. Although discrepancies exist, the testimony considered as a whole is not so suspect as to render it inadmissible.

Nevertheless, even if the testimony should have been excluded, as defendant contends, any error in admitting it was harmless. Defendant maintains that its admission constitutes reversible error because the court's comment, "[t]here is much in aggravation in the evidence in this case," following a statement regarding the prior shooting incident, indicates the testimony regarding the incident constituted the court's main consideration in aggravation. We disagree and believe, as the State asserts, that the trial judge's remark did not refer to the

testimony regarding the prior shooting incident but rather to the facts of the instant case. The remark immediately preceded the court's comments regarding the brutality of defendant's conduct toward a victim of over 70 years old and the fact that defendant had planned the crime ahead of time. Clearly, the brutality alone of this senseless and intentional murder supported the natural life imprisonment, and, thus, any consideration by the court of the prior shooting incident was harmless beyond a reasonable doubt.

■■ In his next contention, defendant also maintains the court erred in entering judgment for two counts of murder based upon one homicide. Defendant argues that, as a result, his natural life sentence must be vacated and the cause remanded for resentencing.

In the instant action the defendant was convicted of murder under sections 9—1(a)(1) and 9—1(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(3)). Since there can be only one murder conviction when there is only one victim (*People v. Martin* (1983), 112 Ill. App. 3d 486, 504, 445 N.E.2d 795), judgment should have been entered and sentence imposed only on the more serious of the two offenses, *i.e.*, the intent murder charge. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477.) As a result, defendant argues that the cause must be remanded for resentencing since it is impossible to discern to what extent the felony murder conviction may have influenced the trial judge in the sentencing decision. Nevertheless, if there is no indication in the record that the trial court was influenced by the second conviction for murder, remand for resentencing is not necessary. *People v. Smith* (1984), 124 Ill. App. 3d 805, 813, 465 N.E.2d 101.

■■ Here, there is no indication in the record that the trial judge considered both murder counts when sentencing defendant. Moreover, we note that defendant's conviction and sentence could stand on either offense. Both offenses constituted homicide, and a conviction on either one of them made defendant eligible for natural life imprisonment due to the brutal conduct involved. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b).) Accordingly, we do not find that the judge considered duplicative counts when imposing sentence on defendant, and, therefore, although the murder conviction under section 9—1(a)(3) must be vacated, the cause is not remanded for resentencing.

■■ Defendant also argues that his sentence of natural life imprisonment is excessive. We disagree. In determining an appropriate sentence, a defendant's potential for rehabilitation is not entitled to more weight than the seriousness of the offense. (*People v. Williams* (1985), 136 Ill. App. 3d 126, 129, 483 N.E.3d 306.) The nature of the

crime, the protection of the public, deterrence and punishment must be equally considered. (*People v. Darnell* (1981), 94 Ill. App. 3d 830, 838, 419 N.E.2d 384.) Moreover, a trial judge's decision in regard to sentencing is entitled to great deference and weight and may not be altered absent an abuse of discretion. *People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.

The record clearly indicates that in imposing sentence the trial court considered all the evidence adduced at trial, the presentence report, and the factors presented in aggravation and mitigation at the sentencing hearing. Although defendant was eligible for the death penalty, the court considered the defendant's youth, brutalized childhood, drug and alcohol abuse, and fairly recent criminality to impose a term of natural life rather than the death penalty.

■■ Relying on *People v. Gurga* (1986), 150 Ill. App. 3d 158, 501 N.E.2d 767, the defendant maintains, however, that in sentencing him the court gave improper consideration to defendant's mental illness, that the manifest weight of the evidence established that defendant was mentally ill at the time of the offense, that his sentence was excessive, and that, therefore, the cause should be remanded for entry of a judgment of guilty but mentally ill and for resentencing. We disagree, as the evidence adduced at trial, which the court specifically stated it would consider in sentencing defendant, indicated that defendant was neither insane nor suffering from a mental illness at the time he committed the instant murder.

■■ In ascertaining whether a defendant was suffering from a mental illness at the time of the commission of an offense, the trier of fact must weigh the totality of the evidence and determine the credibility of both lay and expert witnesses. (*People v. Jones* (1982), 109 Ill. App. 3d 120, 126, 440 N.E.2d 261.) The trier of fact may consider defendant's statements as well as the physical evidence and any other facts and evidence in determining the mental illness issue. (*People v. Meeker* (1980), 86 Ill. App. 3d 162, 168, 407 N.E.2d 1058.) Moreover, the conclusion of a defense psychiatrist on the question of sanity or mental illness need not be accepted by the trier of fact. *People v. Hollins* (1985), 136 Ill. App. 3d 1, 5, 482 N.E.2d 1053.

Defendant maintains that the only evidence that he was not mentally ill rested in the testimony of the State's expert, Dr. Donald Pearson. Our review of the record indicates otherwise. While it is true that defendant's expert witnesses, psychiatrists Anthony D'Souza and Donald MacLean and psychologist Frederick McNelly, diagnosed defendant as suffering from paranoid schizophrenia, whereas

Pearson diagnosed defendant as suffering only from a character disorder, it was for the trier of fact to resolve this contradictory testimony. In resolving contradictions the trier of fact may accept one expert's opinion over another, and the weight to be given an expert's opinion is measured, in part, by the factual details supporting his conclusions. (*People v. Palmer* (1985), 139 Ill. App. 3d 966, 972-73, 487 N.E.2d 1154.) Here, the trial judge did not err in accepting Pearson's testimony as the more credible.

As the State points out in its supplementary brief, both D'Souza and MacLean testified that their findings and conclusions regarding defendant's mental state were based upon a clinical interview each conducted with defendant. D'Souza admitted doing no independent psychological testing corroboration or physical system corroboration and that the only evidence he had that defendant was mentally ill was based upon what defendant told him. Additionally, although MacLean diagnosed defendant as suffering from paranoid schizophrenia, he also diagnosed defendant as borderline personality disorder as well as substance use disorder.

Although defendant's witness, Dr. McNelly, testified that he administered various psychometric evaluation techniques or tests in addition to conducting clinical interviews, some of the tests were designed to determine intellectual ability and educational skills. Moreover, McNelly's testimony revealed that defendant's statements during clinical interviews with the psychiatrist regarding what happened during the offense were not consistent.

The State's expert, Dr. Pearson, not only conducted a clinical interview but also administered a battery of 10 or 12 tests to defendant over a two-day period. Pearson testified that while conversing with defendant, he found defendant to be fully oriented, his memory intact, his affect appropriate, and his mood appropriate. No active delusions were present, although frequent references of grandiosity were noted by the doctor. Pearson also related that defendant told him that defendant and his accomplice had been drinking heavily and using drugs at the time of the incident. According to Pearson's diagnosis, defendant exhibited a character disorder.

Pearson also testified that he had concluded that defendant was fabricating a great deal of his responses during Pearson's examination of him. Pearson explained that the results of a test administered to defendant were submitted to two computer programs which independently substantiated Pearson's interpretation of the test that defendant was exaggerating his symptoms of mental illness. It was Pearson's conclusion that defendant was not suffering from a substantial

disorder of thought, mood, or behavior which would have impaired his judgment at the time of the commission of the murder.

Additionally, the State directs our attention to other evidence which proves defendant was not mentally ill at the time he killed the victim. For example, defendant's own handwritten statement that "I went in just to kill her, just for the pleasure of killing her, and I went into her room and stabbed her while she was sleeping" as well as his January 2, 1986, statement to police showed that his murder of the victim was planned, calculated, and unprovoked. Also, according to the presentence investigation report, defendant had indicated he was "under the influence of beer, LSD, and mushrooms" at the time of the offense. This statement substantially refutes defendant's position that his alleged mental illness affected his judgment at the time of the murder.

Although defendant relies on his preexisting hospitalizations for mental health problems as evidence that he was suffering from a mental illness when he killed the victim, we note from the presentence report that defendant's first hospitalization resulted from violent behavior toward family members during a time when his mother became aware of his usage of drugs and alcohol. That hospitalization lasted for 11 days. Defendant's second hospitalization, which was voluntary and occurred about three months prior to the murder, lasted 10 days. The discharge summary from defendant's second hospitalization indicates defendant claimed infrequent alcohol consumption and no use of drugs, but defendant admitted to the presentence investigator that he had first used drugs at age seven and had regularly used them from age 13 to 19. The summary also related that defendant had indicated that he had been bothered by auditory hallucinations. However, the summary concluded that defendant's description of the voices he heard made the presence of hallucinations questionable. Additionally, the report states that defendant's insight and judgment were poor but that no evidence of any overt psychosis was present.

In light of the evidence related above and other evidence not discussed herein but also presented to the trial judge, we find that the judge's verdict of guilty rather than guilty but mentally ill was not against the manifest weight of the evidence. Moreover, that it is evident in sentencing defendant that the judge considered the possibility of a verdict of guilty but mentally ill is supported by the judge's statements on the record that he had given consideration to such a verdict. Accordingly, we conclude from the evidence that defendant's original guilty verdict should not be altered to a verdict of guilty but mentally ill.

Even if, however, we had determined that a verdict of guilty but mentally ill should have been entered, remand for resentencing would be, as the State points out, unnecessary. Section 5—2—6(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—2—6(a)) provides that a trial judge may impose any sentence upon the defendant which could have been imposed pursuant to law upon a defendant convicted of the same offense without a finding of mental illness.

■■ Given the nature of defendant's crime, we do not find his sentence of natural life imprisonment to be excessive or greater than what would have been imposed had defendant been found guilty but mentally ill. Defendant's crime was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" and as such, as indicated above, his conduct made him eligible for the death penalty. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b).) The victim's death in this case was casually undertaken, was performed cold-bloodedly without any provocation on the part of the victim, and was horribly mutilating to the body of the victim. As death was not instantaneous, it cannot be determined what mental and physical suffering the victim incurred during her last moments of life. We conclude that the trial court did not abuse its discretion in sentencing defendant to life imprisonment and that this sentence would be equally appropriate even had defendant been found guilty but mentally ill.

For all the reasons set forth above, the judgment of the circuit court of Winnebago County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

DUNN and NASH, JJ., concur.