THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS KAPSALIS, Defendant-Appellant.

First District (6th Division)   No. 1—87—3500

Opinion filed June 30, 1989.—Rehearing denied August 3, 1989.

98

Adam Bourgeios, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and Beth Herndobler, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

Defendant, Thomas Kapsalis, was charged in a 26-count indictment with kidnapping, aggravated kidnapping, unlawful restraint, aggravated battery, armed violence, rape, criminal sexual assault, and aggravated criminal sexual assault. Prior to trial, defendant asserted the affirmative defense of insanity. (Ill. Rev. Stat. 1985, ch. 38, par. 3—2.) Following a bench trial, defendant was convicted of criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)), was acquitted of the remaining 25 counts, and was sentenced to a term of seven years' imprisonment. On appeal, defendant contends that (1) the evidence was insufficient to prove that he was sane at the time of the offense, and (2) section 6—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 6—2), governing insanity and criminal responsibility, is unconstitutional.

The evidence adduced at trial established that about 4:15 a.m. on September 7, 1985, complainant, Susie Greenspan, was walking north on Lincoln Avenue toward her boyfriend's house when she observed defendant leaning against the wall of a building adjacent to a vacant lot. Complainant was wearing a black sweatshirt and a black lace skirt. As complainant passed him, defendant grabbed her and dragged her 60 feet into the vacant lot, which was covered with weeds that were three-feet high. When complainant began to scream, defendant covered her mouth and threatened to kill her if she screamed.

Defendant threw complainant to the ground and pinned her down with his stomach. Complainant struggled with defendant, who squeezed her face and neck so hard that she was unable to speak. Defendant again threatened complainant and asked her whether she "wanted it easy or hard." Defendant then pulled a knife from his utility belt and put it to complainant's neck. He tore open her shirt, fondled her breasts, lifted her skirt, and said, "No panties. My kind of girl." Thereafter, defendant inserted his finger into complainant's vagina. When complainant renewed her struggle and began to rock from side to side, defendant removed his finger and attempted to regain control of her. Defendant then looked toward the street, immediately jumped up, and ran away.

Complainant began to scream and ran to the street, where she flagged down a police car driven by Officer Robert Hayes. Complainant told Officer Hayes and his partner about the attack, described defendant, and said that he had run toward the alley. She then got into the officers' car and rode with them a short distance until she saw defendant. Complainant identified defendant as her attacker, and Officer Hayes placed him under arrest. When Hayes searched defend-

ant, he recovered a knife. Upon being advised of his *Miranda* rights, defendant told Officer Hayes that he had been drinking prior to his arrest and was "high, but not drunk." Defendant denied attacking complainant and said that he had never seen her before.

Testifying on his own behalf, defendant stated that on the night of the attack, he had consumed approximately a case of beer and one-half bottle of whiskey. He could not recall the events during the attack on complainant, but did remember having a flashback to his combat experiences during his two years in Vietnam. He recalled being in a high-grass area in a vacant lot where he saw "the enemy," Vietnamese dressed all in black. Defendant stated that he believed that he was attacking "the enemy." Defendant admitted having a knife that night and remembered threatening complainant, but did not recall putting his finger into her vagina. Defendant testified that he did not know what he was doing or that his acts were wrong and that this was not the first time he had suffered a flashback to his combat experiences in Vietnam. He admitted, however, that he did not tell anyone about the Vietnam flashback until approximately three weeks after his attack on complainant. Following this incident, defendant was confined to the psychiatric ward of a Veterans' Association hospital for a month, and upon his release, defendant began receiving therapy twice weekly. Defendant also stopped drinking alcohol and began attending Alcoholics Anonymous meetings.

The parties stipulated that if called as witnesses, Henry Conroe, M.D., Lee Martin, Ph.D., and Gerson Kaplan, M.D., would testify in accordance with the facts and assertions included in the reports of their examinations of defendant.

Dr. Conroe's report stated:

"[Defendant] had two psychiatric diagnoses on 9/7/85. The first was Chronic Post-traumatic Stress Disorder ***. The second diagnosis was Alcohol Dependence ***. Both of these mental disorders were present on 9/7/85 and prevented [defendant] from appreciating the criminality of his actions and conforming his conduct to the requirements of the law. *** The alleged assault on 9/7/85 was due to an explosion of his suppressed rage at being in a vulnerable position in Vietnam. *** On 9/7/85 while under the influence of significant amounts of alcohol which impaired his judgment, he used the solution he learned in Vietnam to deal with a potential enemy, 'search and destroy.' His alleged actions were an attempt to destroy this woman whom he experienced as a Vietnamese enemy."

Dr. Martin's report stated:

"Although it is not possible to directly identify causes for [defendant's] behaviors in the fall of 1985 when he assaulted a woman, we can speculate that the anxious feelings he has been experiencing for several years became very intense, he needed a way to release the pressure, and he unconsciously reacted, when the situation presented itself to him, in a way that he had always done in the past and particularly during Vietnam. *** The woman present on that particular night, in conjunction with the overwhelming internal strife he was experiencing and the flashback to combat may have all surfaced simultaneously and unconscious actions took place."

Dr. Kaplan's report stated:

"[I]t is my opinion that at the time of the alleged offense, this defendant was legally SANE. It is my opinion, he was able to appreciate the criminality of the alleged offense, and was able to conform his conduct to the requirements of the law."

Following closing arguments, the trial judge stated his finding was "predicated upon the totality of all of the evidence. I very carefully examined the [26-count] indictment in question. I very carefully considered the testimony of all the witnesses who were called to testify. I very carefully have examined as they were tendered the exhibits offered and accepted into evidence without objection, and I most carefully considered the affirmative defense alleged by [defendant] as well as the stipulated evidence thereto already enunciated into the record by this [c]ourt. On the totality of all of those factors, this [c]ourt finds the defendant *** guilty of the offense of criminal sexual assault as set forth in [c]ount [nine] of the instant indictment."

After a hearing in aggravation and mitigation, the trial court sentenced defendant to a term of seven years, indicating that "[t]here is no question that [defendant] had ingested a great deal of alcohol on this occasion. There is no question in my mind that he has some minor emotional problem, and I am thoroughly convinced it did not arise to a defense of insanity. There is no question that [defendant] is a—was a wounded Vietnam vet and he has no prior criminal activities. Predicated upon all those factors it would appear to this [c]ourt that this was an isolated incident induced by large quantities of alcohol."

■■ ■ We initially consider defendant's claim that the evidence was insufficient to prove that he was sane at the time of the offense. Defendant does not deny that he sexually assaulted the complainant. He asserts, however, that he was not criminally responsible for his conduct at the time of the offense. A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental

disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. (Ill. Rev. Stat. 1985, ch. 38, par. 6—2(a).) Although the law presumes all persons to be sane (*People v. Eckhardt* (1987), 156 Ill. App. 3d 1077, 1089, 509 N.E.2d 1361; *People v. Dunigan* (1981), 96 Ill. App. 3d 799, 821, 421 N.E.2d 1319), a defendant may overcome this presumption with proof by a preponderance of the evidence that he was insane when he committed the offense with which he has been charged. Ill. Rev. Stat. 1985, ch. 38, pars. 3—2, 6—2(e); *People v. Moore* (1986), 147 Ill. App. 3d 881, 886, 498 N.E.2d 701; *People v. Hollins* (1985), 136 Ill. App. 3d 1, 5, 482 N.E.2d 1053.

■ Whether or not a defendant was insane at the time of the offense is a question for the trier of fact, and that decision will not be reversed by a court of review unless it is so improbable or unsatisfactory as to raise a reasonable doubt as to the defendant's sanity (*People v. Carlson* (1980), 79 Ill. 2d 564, 580, 404 N.E.2d 233; *People v. Ward* (1975), 61 Ill. 2d 559, 568, 338 N.E.2d 171) or is so manifestly contrary to the weight of the evidence as to indicate that the determination was based on passion or prejudice. *People v. Silagy* (1984), 101 Ill. 2d 147, 169, 461 N.E.2d 415; *People v. Ford* (1968), 39 Ill. 2d 318, 321, 235 N.E.2d 576; *People v. Palmer* (1985), 139 Ill. App. 3d 966, 972, 487 N.E.2d 1154.

■ In ascertaining whether a defendant was insane at the time of the commission of an offense, the trier of fact must weigh the totality of the evidence and determine the credibility of the witnesses. (*People v. Wright* (1987), 161 Ill. App. 3d 967, 979, 514 N.E.2d 817; *People v. Eckhardt* (1987), 156 Ill. App. 3d 1077, 509 N.E.2d 1361.) The trier of fact must resolve conflicts in the testimony of expert witnesses and may disregard an expert's conclusion as to defendant's sanity at the time of the offense. (*People v. Wright* (1987), 161 Ill. App. 3d 967, 514 N.E.2d 817; *People v. Palmer* (1985), 139 Ill. App. 3d 966, 487 N.E.2d 1154; *People v. Schwartz* (1985), 135 Ill. App. 3d 629, 642, 482 N.E.2d 104; *People v. Meeker* (1980), 86 Ill. App. 3d 162, 169, 407 N.E.2d 1058.) Thus, the trial court need not accept the opinions of psychiatrists proffered by the defendant, but is entitled to consider contrary opinions of the State's expert witness. *People v. Eckhardt* (1987), 156 Ill. App. 3d 1077, 509 N.E.2d 1361; *People v. Hollins* (1985), 136 Ill. App. 3d 1, 482 N.E.2d 1053.

In the instant case, the expert testimony was conflicting. Dr. Conroe concluded that defendant suffered from post-traumatic stress disorder and from alcohol dependence and could not conform his conduct to the requirements of the law on the night he sexually assaulted the

complainant. Dr. Conroe also indicated, however, that defendant was under the influence of significant amounts of alcohol which impaired his judgment and caused him to "search and destroy" the complainant whom he perceived as "the enemy." Dr. Martin stated that it was not possible to directly identify the cause for defendant's assault of complainant, but speculated that defendant needed to release pressure from anxious feelings. Dr. Martin surmised that the complainant's presence along with defendant's internal strife and the flashback to combat may have surfaced simultaneously and unconscious actions took place. Dr. Kaplan concluded that defendant was sane at the time of the offense and that defendant was able to appreciate the criminality of the alleged offense and was able to conform his conduct to the requirements of the law.

■ The trial court was obligated to resolve the conflicts in the testimony presented by the psychiatric experts. (*People v. Wright* (1987), 161 Ill. App. 3d 967, 514 N.E.2d 817; *People v. Palmer* (1985), 139 Ill. App. 3d 966, 487 N.E.2d 1154.) Consequently, it was within the court's discretion to accept the opinion of Dr. Kaplan over those of Dr. Conroe and Dr. Martin. *People v. Eckhardt* (1987), 156 Ill. App. 3d 1077, 509 N.E.2d 1361; *People v. Hollins* (1985), 136 Ill. App. 3d 1, 482 N.E.2d 1053.

Moreover, the trial court's determination that defendant was sane at the time of the offense was supported by other evidence in the record. (*Cf. People v. Young* (1978), 60 Ill. App. 3d 351, 376 N.E.2d 739.) During the attack, defendant asked complainant whether she "wanted it easy or hard." After lifting complainant's skirt up to her waist, he said, "No panties. My kind of girl." Defendant tore complainant's shirt, fondled her breasts, and inserted his finger into her vagina. After looking toward the street, defendant immediately jumped up and ran away.

When apprehended by the police minutes after the assault, defendant denied any involvement in the crime, but said nothing to the officers about having a flashback. Indeed, defendant never told anyone that he had experienced a flashback until approximately three weeks after the incident. Defendant asserted that he had previously suffered flashbacks to combat in Vietnam, but there was no evidence that defendant had been unable to control his conduct at any time prior to this offense. Although defendant claimed that he believed that he was "attacking the enemy," there was no evidence that defendant attempted or intended to kill complainant. We find that the trial court could have properly inferred from these facts that defendant was able to control his conduct and could appreciate the criminal-

ity of his actions.

■ Although post-traumatic stress disorder has been recognized as a mental illness (*Johnson v. Wainwright* (11th Cir. 1985), 778 F.2d 623; *Wilburn v. State* (1986), 289 Ark. 224, 711 S.W.2d 760; *State v. Place* (1985), 126 N.H. 613, 495 A.2d 1253; *State v. Watson* (1984), 311 N.C. 252, 316 S.E.2d 293), the evidence in the case at bar does not support defendant's assertion that he experienced a flashback to combat in Vietnam at the time of the offense. Rather, the record indicates that, after having consumed a large amount of alcohol, defendant intended to sexually assault the complainant under cover of high weeds. (*Cf. People v. Dread* (1975), 27 Ill. App. 3d 106, 327 N.E.2d 175.) In light of the evidence presented in this case, it cannot be said that the court's determination was so improbable or unsatisfactory as to raise a reasonable doubt as to defendant's sanity. See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233; *People v. Hollins* (1985), 136 Ill. App. 3d 1, 482 N.E.2d 1053.

Defendant also asserts that section 6—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 6—2) is unconstitutional. Relying on *People v. Gurga* (1986), 150 Ill. App. 3d 158, 501 N.E.2d 767, defendant argues that this court must decide the constitutionality of this statute because the trial court did not expressly find that defendant was able to appreciate the criminality of his acts or that he was able to conform his conduct to the requirements of the law.

Contrary to defendant's assertion, the record reveals that the trial judge did, in fact, make a specific finding as to defendant's sanity. At sentencing, the trial judge stated, "There is no question that [defendant] had ingested a great deal of alcohol on this occasion. There is no question in my mind that he has some minor emotional problem, and I am thoroughly convinced it did not arise to a defense of insanity. There is no question that [defendant] is a—was a wounded Vietnam vet and he has no prior criminal activities. Predicated upon all those factors it would appear to this [c]ourt that this was an isolated incident induced by large quantities of alcohol." These comments clearly indicate that the trial court found defendant sane at the time of the offense. Because review of the entire record reveals that the trial court did make a specific finding as to defendant's sanity (see *People v. Ellis* (1974), 59 Ill. 2d 255, 320 N.E.2d 15; *People v. Steinmetz* (1982), 110 Ill. App. 3d 439, 442 N.E.2d 645), this court need not address the constitutional claims raised by defendant. *People v. Gurga* (1986), 150 Ill. App. 3d 158, 501 N.E.2d 767.

■ Although we need not reach this issue, careful consideration of defendant's assertion reveals that it is without merit. Defendant

initially contends that because the statute fails to define "mental disease or mental defect," it violates the constitutional guarantee of due process of law. (U.S. Const., amend. V.) This argument is unpersuasive. Defendant has alleged that "while psychiatrists would agree that [c]hronic [p]ost-traumatic [s]tress [disorder] is a mental disease or mental defect, there is no general concurrence what other conditions of ill health of the mind fall into [this] category." Because defendant asserted post-traumatic stress disorder as an affirmative defense to the crime charged here, he cannot claim to have been prejudiced because there may not be a consensus as to "what other conditions of ill health of the mind" would be included in that category. Additionally, if defendant is correct in alleging that "psychiatrists would agree that [c]hronic [p]ost-traumatic [s]tress [disorder] is a mental disease or defect," then he cannot assert that section 6—2(a) is vague or uncertain. All that is required is to read "post-traumatic stress disorder" where the legislature has written "mental disease or mental defect." That is, apparently, the approach taken by the trial court here, and it does not appear that defendant's constitutional right to due process was violated or prejudiced in any way.

Section 6—2 of the Criminal Code of 1961 provides, in pertinent part, as follows:

> "(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

* * *

> (d) For purposes of this Section, 'mental illness' or 'mentally ill' means a substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law." Ill. Rev. Stat. 1985, ch. 38, pars. 6—2(a), (d).

■ Contrary to defendant's contention, "mental disease or mental defect" need not be precisely defined in order to comply with the constitutional requirement of due process. A statute will not be considered so vague as to constitute a denial of due process unless (1) people of common intelligence must necessarily guess at its meaning or application; (2) it fails to provide sufficiently definite standards for law-enforcement officers and triers of fact so that its application depends upon their private conceptions; or (3) it chills the free exercise

of first amendment rights. (*People v. Garrison* (1980), 82 Ill. 2d 444, 453, 412 N.E.2d 483.) The determination of whether a statute is unconstitutionally vague is to be made in the factual context of each case. *Garrison,* 82 Ill. 2d at 454, 412 N.E.2d at 488.

The terms "mental disease or mental defect" cannot be considered unconstitutionally vague. Within the context of section 6—2(a), "mental disease or mental defect" clearly refers to a condition which prevents a person from appreciating the criminality of his conduct or from conforming his conduct to the requirements of the law. (Ill. Rev. Stat. 1985, ch. 38, par. 6—2(a).) This provision should not be invalidated merely because it attempts to describe "mental disease or mental defect" rather than to list each and every condition which may fall into this category. *Garrison,* 82 Ill. 2d 444, 412 N.E.2d 483.

Indeed, it would be nearly impossible for the legislature to enact a provision that would create such a list. As noted by the Illinois Supreme Court in construing section 1—119 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1985, ch. 91½, par. 1—119):

> "[T]oo much emphasis has been placed on the existence or nonexistence of a recognizable psychiatric disease in determining whether a person is 'mentally ill' for purposes of civil commitment. Diagnostic classifications in the mental-health field are constantly undergoing revision *** and thus it would be unwise to equate the legal term 'mentally ill' in section 1—119 with the laundry list of diagnoses or psychiatric classifications in vogue at a given moment. Otherwise, the definition of 'mental illness' could ebb and flow depending on the then-current consensus of mental-health professionals. While diagnostic categories are important to mental-health professionals as an aid in the discussion, treatment and study of mental illness, it cannot be expected that lay jurors or even an experienced trial judge will always understand the nuances and significance of a particular psychiatric diagnosis. *** For the foregoing reasons, we think that a finding of 'mentally ill' should not be dependent upon diagnostic categories or nomenclature, but on the·extent to which a person's functioning is impaired by his mental illness. A 'mentally ill' person for purposes of section 1—119 is an individual with an organic, mental or emotional disorder which substantially impairs the person's thought, perception of reality, emotional process, judgment, behavior, or ability to cope with the ordinary demands of life." *People v. Lang* (1986), 113 Ill. 2d 407, 452-53, 498 N.E.2d 1105.

Although the *Lang* court addressed the validity of the definition of "mental illness" within the context of a civil statute (Ill. Rev. Stat. 1985, ch. 91½, par. 1—119), the logic and reasoning employed by that court are appropriate in the instant case. Under section 6—2(a), a determination of legal sanity or insanity should not be dependent upon diagnostic categories or nomenclature, but on the extent to which a person is able to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Ill. Rev. Stat. 1985, ch. 38, par. 6—2(a).

■ When considering whether a statute violates due process, the court must determine whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare. The due process clause requires only that the statute be reasonably designed to accomplish its purposes, not that it be the best means of accomplishing them. (*People v. Burton* (1981), 100 Ill. App. 3d 1021, 427 N.E.2d 625.) In the instant case, the legislature intended to enact a statute that would provide triers of fact with a logical scheme by which to determine the criminal responsibility of a defendant who has presented evidence of insanity or mental illness as an affirmative defense to the crime charged. Section 6—2 is rationally designed to accomplish that goal.

In determining the constitutionality of this statute, it is instructive to examine decisions construing similar provisions. In *People v. DeWit* (1984), 123 Ill. App. 3d 723, 463 N.E.2d 742, the defendant challenged section 115—4(j) of the Code of Criminal Procedure of 1963, which governs jury trials. (Ill. Rev. Stat. 1985, ch. 38, par. 115—4(j).) There, the court held the definition of "mental illness" was sufficiently clear to provide meaningful standards, enabling the jury to make the required findings under the laws applicable to the case. (*DeWit*, 123 Ill. App. 3d at 737, 463 N.E.2d at 751.) Although the *DeWit* court considered a different provision than that at issue here, the jury instruction defining mental illness was identical to the language employed in section 6—2(d). Ill. Rev. Stat. 1985, ch. 38, par. 6—2(d).

Also instructive is the Illinois Supreme Court's finding in *People v. Silagy* (1984), 101 Ill. 2d 147, 461 N.E.2d 415, *cert. denied* (1984), 469 U.S. 873, 83 L. Ed. 2d 156, 105 S. Ct. 227, that the phrase "extreme mental or emotional disturbance" is not unconstitutionally vague when considered as a mitigating factor in sentencing decisions. (*Silagy*, 101 Ill. 2d at 163, 461 N.E.2d at 423.) Similar challenges to guilty-but-mentally-ill provisions were advanced and rejected in *People v. Boatright* (1985), 137 Ill. App. 3d 888, 486 N.E.2d 926, *People v.*

*Carter* (1985), 135 Ill. App. 3d 403, 481 N.E.2d 1012, and *People v. Smith* (1984), 124 Ill. App. 3d 805, 465 N.E.2d 101.

Finally, defendant contends that section 6—2 violates the constitutional guarantee of equal protection of the law (U.S. Const., amend. XIV) by excluding from the statutory scheme the class of defendants who suffer from a mental illness but are unable to appreciate the criminality of their conduct or to conform their conduct to the requirements of the law. A similar argument was advanced in *People v. Kaeding* (1983), 98 Ill. 2d 237, 456 N.E.2d 11, where the defendant challenged the constitutionality of the guilty-but-mentally-ill statute. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—6.) There, the Illinois Supreme Court held that the guilty-but-mentally-ill statute did not violate the constitutional guarantee of equal protection of the law. *Kaeding*, 98 Ill. 2d at 246-48, 456 N.E.2d at 16-17.

A statute carries a presumption of rationality when undergoing the traditional equal protection examination, and it is the defendant's burden to demonstrate the impermissible nature of the classification created. (*People v. Mayberry* (1976), 63 Ill. 2d 1, 345 N.E.2d 97, *cert. denied* (1976), 429 U.S. 828, 50 L. Ed. 2d 92, 97 S. Ct. 87.) In the instant case, defendant has failed to meet this burden. As previously noted, the legislature intended to enact a statute that would provide triers of fact with a logical scheme by which to determine the criminal responsibility of a defendant who has presented evidence of insanity or mental illness as an affirmative defense to the crime charged. Contrary to defendant's assertion, section 6—2 does not exclude those defendants with a mental illness and who cannot appreciate the criminality of their conduct or are unable to conform their conduct to the requirements of the law. Such defendants would clearly be included within the class of persons found to be legally insane, or not criminally responsible, under section 6—2(a). (Ill. Rev. Stat. 1985, ch. 38, par. 6—2(a).) Accordingly, section 6—2 is rationally based upon a legitimate legislative purpose and does not create an arbitrary classification. See *People v. Carter* (1985), 135 Ill. App. 3d 403, 481 N.E.2d 1012; *People v. Smith* (1984), 124 Ill. App. 3d 805, 465 N.E.2d 101; *People v. Gamble* (1983), 117 Ill. App. 3d 543, 453 N.E.2d 839.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

EGAN, P.J., and QUINLAN, J., concur.