STATE v. WILLARD FERGUSON.

(Filed 28 April, 1926.)

**1. Criminal Law—Courts—Jurisdiction—Parties—Evidence—Indictment.**

A conviction of a criminal offense must be by a court of competent jurisdiction over the offense and the party charged therewith, which should be sufficiently charged in every material part by the indictment, with evidence sufficient to support a conviction, and the person thus tried must be properly made a defendant in the action, with the right to be heard therein.

**2. Juvenile Courts—Jurisdiction—Delinquent Children—Superior Courts —Judgments—Adjudication—Statutes.**

The juvenile courts of the State are now given by statute exclusive original jurisdiction of delinquent children under sixteen years of age, with prescribed procedure by which an adjudication may be therein determined. C. S., 5057.

**3. Statutes—Interpretation—Child Welfare—Juvenile Courts.**

The child's welfare act, Public Laws of 1919, ch. 97, and Art. 2 thereof, establishing the juvenile courts, C. S., 5039 *et seq.*, were enacted as a whole, and the sections are interrelated and interdependent, and the intent thereof is so to be interpreted.

**4. Same—Courts—Jurisdiction.**

The adjudication of one other than the parent or guardian of the child, of causing the delinquency of a female child under sixteen years of age, etc., must be had in the juvenile courts as having statutory original jurisdiction over the parties and subject-matter.

**5. Statutes—Interpretation.**

The courts will give various statutes upon the same subject-matter the interpretation which will reasonably harmonize them.

STACY, C. J., and CLARKSON, J., dissenting.

APPEAL by defendant from *Cranmer, J.,* at January Term, 1926, of HALIFAX.

The second count in the indictment is as follows:

"And the jurors aforesaid on their oaths as aforesaid, do further present: That said Willard Ferguson at and in said county on 20 September, 1925, with force and arms, unlawfully and wilfully and knowingly did take riding in one automobile and give intoxicating liquor to one Elsie Pully, a child over whom her parents had the custody, which said acts produced, promoted and contributed to the condition which caused said Elsie Pully to be adjudged delinquent, neglected and in need of the care, protection and discipline of the State, contrary to the statute in such cases made and provided, and against the peace and dignity of the State."

Upon this count the defendant was convicted, judgment was pronounced, and an appeal was taken based on exceptions duly entered of record.

The State's evidence tended to show that Elsie Pully, a girl fourteen years of age, lived with her father and mother at Rosemary in Halifax County. In September, 1925, she, R. E. Smith, Eliza Sanders, and Claude Parks went in a car to Roanoke Rapids, and then five miles further on to Floyd's store in Northampton County, where they found Salem Newsome and the defendant, Willard Ferguson. Ferguson was in his car. Salem Newsome, who was standing between the two cars, said, "Come and let's go and get some whiskey." Newsome, Smith, and Elsie went in Smith's car to Moss's store in Virginia, and Eliza Sanders, Claude Parks and the defendant went there in the defendant's car. When they arrived at the store in Virginia all except Elsie went in and drank some whiskey. Eliza Sanders brought Elsie some whiskey and she drank it; afterwards the defendant gave her a drink. On the return Eliza Sanders, Elsie, Parks and the defendant occupied the defendant's car. When she awoke she was alone in the automobile near Floyd's store. The defendant was near by. Dr. Long examined Elsie after her return, and on the trial he expressed the opinion that she had engaged in immoral conduct. Her father testified that before the trip he had been able to control his daughter, but not since her return home.

The statute is as follows: "A parent, guardian or other person having the custody of a child who omits to exercise reasonable diligence in the care, protection or control of such child, causing it to be adjudged delinquent, neglected, or in need of the care, protection or discipline of the State as provided in this article, or who permits such child to associate with vicious, immoral or criminal persons, or to beg or solicit alms, or to be an habitual truant from school, or to enter any house of prostitution or assignation or any place where gambling is carried on, or to enter any place which may be injurious to the morals, health, or general welfare of such child, and any such person or any other person who knowingly or wilfully is responsible for, encourages, aids, causes or connives at or who knowingly or wilfully does any act to produce, promote or contribute to the condition which caused such child to be adjudged delinquent, neglected, or in need of the care, protection or discipline of the State, shall be guilty of a misdemeanor." C. S., 5057.

*Attorney-General Brummitt and Assistant Atorney-General Ross for the State.*

*George C. Green for defendant.*

ADAMS, J. In disposing of this appeal we must guard against the natural tendency to ignore a familiar legal principle because the case

happens to exhibit a gross type of delinquency. The defendant's conduct may have been immoral and indefensible; it may have been such as to make him amenable to other provisions of the criminal law; but these considerations should not obscure our vision or divert our minds from the single inquiry whether he should have been convicted upon the evidence offered by the State.

The object of our organic law is to secure the individual against the arbitrary exercise of powers unrestrained by established rules. In criminal prosecutions he is to be tried upon an indictment accurately describing the offense with which he is charged; he cannot lawfully be convicted unless the evidence adequately sustains every constituent element of the offense; and he cannot be haled to court for the commission of one crime and there convicted of another. *S. v. Wilkerson,* 164 N. C., 432, 444. These principles we must keep in mind in determining whether a right has been denied and a wrongful conviction obtained upon a total failure of essential evidence.

The statute upon which the indictment was drawn is set out in the statement of facts. It was enacted by the General Assembly in 1919 as one of a series of statutes providing for the creation and organization of juvenile courts. Public Laws 1919, ch. 97. These several statutes compose Art. 2 in the chapter on Child Welfare. C. S., 5039, *et seq.* They were enacted as a whole; they deal with one subject; they are a unified body of law, interrelated and interdependent.

An analysis of this section and an examination of its relation to the other sections in Art. 2 may aid us in ascertaining what the Legislature intended. Under its terms two classes are subject to indictment: (1) the parent, guardian, or other person having the custody of the child; (2) under certain conditions, "any other person." Either of those in the first class may be indicted (a) when he omits to exercise reasonable diligence in the care, protection, or control of such child, causing it to be adjudged delinquent, neglected, or in need of the care, protection or discipline of the State "as provided in this article" (Art. 2, *supra*); or (b) when he permits such child to associate with vicious, immoral or criminal persons, etc. The parent or guardian may be prosecuted for acts of omission, causing the child to be adjudged delinquent, etc., or for permitting certain enumerated acts of delinquency. But the latter part of the section includes both classes, and it is the only part which includes the defendant: the parent or guardian or any other person may be prosecuted when he knowingly or wilfully does any act to produce, promote, or contribute to the *condition which caused* such child to be adjudged delinquent, neglected, or in need of the care, protection or discipline of the State. Under this clause the defendant was not subject to indictment unless he had produced, promoted, or contributed to a

condition which had caused an adjudication of delinquency, or an adjudication of neglect, or an adjudication that the child was in need of the protection or discipline of the State. In our opinion the language of the statute forbids the interpretation that he was indictable if he had produced, promoted, or contributed to a condition which had caused her to be *adjudged* delinquent, or *to be* neglected, or *to be* in need of the care, etc., of the State. The words "to be adjudged" obviously apply to each of the conditions named, *i. e.*, to be adjudged delinquent, or to be adjudged neglected, or to be adjudged in need. As to these respective conditions the clause is disjunctive for the reason that if the copulative "and" had been used it would be necessary to show an adjudication of delinquency and of need and of neglect.

It is apparent, then, that a judgment of delinquency must be given, but in what forum? It requires no argument to prove that jurisdiction is absolutely necessary to a valid judgment. The court must have jurisdiction of the parties and jurisdiction of the cause of action embracing every question which its judgment or sentence assumes to decide. 33 C. J., 1072, sec. 34, 35, *et seq.* In the present case the Superior Court assumed to decide and to adjudge that Elsie Pully was a delinquent child. It had no jurisdiction to do so. It was expressly deprived of this jurisdiction when the act of 1915 was repealed. Public Laws 1919, ch. 97, sec. 25. The juvenile courts have exclusive original jurisdiction of any case of a child under sixteen years of age who is delinquent or neglected. The function of the court is defined; its procedure is fixed by statute. Sessions are held; petitions are filed; process is issued directed to the child and its parents; the child is brought before the court and given a hearing. Thereupon "the court, if satisfied that the child is in need of the care, protection or discipline of the State, *may so adjudicate,* and may find the child to be delinquent, neglected, or in need of more suitable guardianship." This is the adjudication referred to by section 5057. In this way the child is adjudged delinquent "as provided in this article." This, it would seem, is the plain meaning of the statute. Not only does it point out the particular method of adjudication; the last clause speaks of the adjudication as a fact accomplished; it refers to "the condition which *caused* such child to be *adjudged* delinquent"— words signifying a judgment; and this is very much more than a mere finding by the jury. Can Elsie Pully's status thus be determined in a criminal action to which she is not a party? Consider a concrete illustration. The defendant is on trial in the Superior Court. If the question of Elsie's delinquency is to be determined in this forum, what is the situation? She comes into court as a witness; she goes out "adjudged" a delinquent—a fit subject to become a ward of the State; and

this without notice to her and without the formality of a hearing. This is not permissible; the law hears before it condemns and renders judgment only after trial.

In our opinion the interpretation we have given these statutes is the only one by which they can be harmonized. It is unwise so to interpret one statute as needlessly to destroy another. We prefer a construction which will preserve the integrity of the juvenile courts and neither impair their usefulness nor take away the exclusive original jurisdiction which the Legislature has given them.

The indictment charges the adjudication, but the evidence fails to disclose it, and for this reason the conviction cannot be sustained.

Error.

STACY, C. J., and CLARKSON, J., dissenting.