STATE OF NORTH CAROLINA v. CLARENCE WATSON

No. 51A84

(Filed 5 June 1984)

1. **Criminal Law § 138— aggravating circumstance that offense was especially heinous, atrocious, or cruel—properly considered**

In a prosecution in which defendant was convicted of the second-degree murder of his wife, the trial court properly considered that the offense was especially heinous, atrocious, or cruel where the evidence tended to show a total of ten bullets were fired into the victim's body; there was ample evidence that the victim was not killed by the first shots; she managed to move from room to room in the house leaving a trail of blood behind her, clearly undergoing fear and pain in the process; death was not instantaneous; and the evidence fully supported a finding that the victim suffered a degree of pain and psychological suffering not normally present in every murder. G.S. 15A-1340.4(a)(1)f.

2. **Criminal Law § 138— failure to find in mitigation that defendant was suffering from a mental condition—no error**

There was no error in the trial court's failure to find in mitigation that defendant was suffering from a mental condition, insufficient to constitute a defense, but significantly reducing his culpability where the evidence was both conflicting and inconclusive with respect to any connection between the murder and defendant's alleged mental problems accompanying military duty in Vietnam 15 years earlier.

3. **Criminal Law § 138— failure to find as mitigating factor that defendant acted under strong provocation—no error**

In a prosecution for the murder of defendant's wife, the trial court did not err in failing to find in mitigation that the defendant acted under strong provocation or that the relationship between the defendant and the victim was otherwise extenuating since a relationship between husband and wife, including marital difficulties in the past, is not sufficient, standing alone, to support a finding of this mitigating factor, and since the only evidence of "provocation" in this case was defendant's learning of the victim's decision to leave the marital home and his finding a cigarette butt in an ashtray, ostensibly indicating that someone other than the defendant or his wife had at some point visited the house.

State v. Watson

**4. Criminal Law § 138— finding aggravating factor outweighed mitigating factors—no error**

   There was no abuse of discretion in the trial judge sentencing defendant to life imprisonment where he weighed the aggravating factor that the murder was especially heinous, atrocious, or cruel, against two mitigating factors: that defendant voluntarily acknowledged wrongdoing, and that defendant has been a person of good character.                                    .

BEFORE *Tillery, J.*, at the 25 July 1983 Criminal Session of Superior Court, NEW HANOVER County, defendant was convicted of the second degree murder of his wife and sentenced to life imprisonment. He appeals pursuant to Rule 4(d) of the North Carolina Rules of Appellate Procedure. Heard in the Supreme Court 9 May 1984.

The issues raised on appeal concern the trial court's application of the Fair Sentencing Act, G.S. § 15A-1340.4. Specifically defendant contends that the trial judge erred in finding in aggravation that the offense was especially heinous, atrocious, or cruel, G.S. § 15A-1340.4(a)(1)f. Defendant also assigns as error the trial judge's failure to find in mitigation that defendant was suffering from a mental condition insufficient to constitute a defense but which significantly reduced his culpability for the offense, G.S. § 15A-1340.4(a)(2)d; and that defendant acted under strong provocation, or the relationship between the defendant and the victim was otherwise extenuating, G.S. § 15A-1340.4(a)(2)i. Finally, defendant contends that the trial judge abused his discretion in finding that the aggravating factor outweighed the mitigating factors and in sentencing the defendant to life imprisonment. We find no error.

*Rufus L. Edmisten, Attorney General, by Kaye R. Webb, Assistant Attorney General, for the State.*

*W. Alex Fonvielle, Jr., and Kenneth B. Hatcher, Attorneys for defendant-appellant.*

MEYER, Justice.

The evidence at trial disclosed the following pertinent facts: The defendant and his wife, Ann Watson, were having marital difficulties. Defendant believed that his wife had been seeing other men. On 18 February 1983, Ann Watson was in the process of moving out of the marital home. She had not informed the defend-

ant of her decision. Defendant, however, became suspicious when he saw his wife driving down the street. He followed her to her new apartment and confronted her. They returned to their home. Upon their arrival at the house, defendant noticed a cigarette butt in an ashtray and smelled smoke. His wife did not smoke, and defendant became upset. According to defendant's testimony at trial, his wife held a gun on him and stated, "You are not going to hit me again." (Apparently defendant had assaulted his wife on one previous occasion.) Defendant and his wife struggled and the defendant took possession of the gun. The physical evidence disclosed that defendant then pursued his wife from one room to another in the house, shooting her as he did so. After emptying the gun of bullets, the defendant reloaded the gun and continued to shoot. A total of ten bullets were fired into Ann Watson's body. Bloodstains were discovered in several rooms of the house. Shortly after the murder, defendant turned himself in to law enforcement authorities. He gave them a statement. He was indicted for first degree murder.

At trial defendant offered the testimony of Dr. Charles E. Smith, a forensic psychiatrist. Dr. Smith testified that defendant suffered from "post traumatic stress disorder." The State offered the testimony of Dr. Bob Rollins, who specifically rejected the diagnosis of "post traumatic stress disorder." The evidence disclosed that defendant served in Vietnam, and that in 1967, as a member of the United States Marine Corps, he was diagnosed as suffering from schizophrenia. There was no evidence that, following his return from Vietnam, he was treated for any mental illness. Defendant testified on his own behalf. His trial testimony was in many respects inconsistent with his earlier statements. Following the presentation of evidence at trial, the trial judge submitted the case to the jury on the theories of first and second degree murder, voluntary manslaughter or not guilty. The jury found defendant guilty of second degree murder. Defendant assigns no error to the guilt phase of his trial.

[1] Defendant first contends that the trial judge erred in finding in aggravation that the offense was especially heinous, atrocious, or cruel. In a well-organized argument, defendant first directs our attention to the fact that the jury rejected the charge of first degree murder thereby negating the element of premeditation and deliberation. Although his argument is not entirely clear on

this issue, defendant seems to suggest that the trial judge therefore improperly considered that the murder was "intentional"; that is, committed with premeditation and deliberation. Furthermore, defendant argues that the trial court was not permitted to consider the multiplicity of shots in aggravation because the State was unable to prove which shot was fatal. Therefore, reasons defendant, proof of every shot was necessary to establish that one of the shots killed the victim. Based on this argument, defendant contends that the trial court erred in using evidence necessary to prove elements of the offense.

As his second argument on this issue defendant contends that the trial judge abused his discretion in finding that the preponderance of the evidence established this factor. He states: "Here the preponderance of the evidence is that during a domestic argument several shots were fired hitting the victim resulting in her death. The Defendant argues that under the circumstances the number, timing and location of the shots was not unusual and that the evidence does not establish an intent to be particularly vicious." While finding these arguments intriguing, we reject them outright. We reject defendant's argument that the trial judge erroneously considered (if he did consider) the multiplicity of wounds. There is ample evidence that the victim was not killed by the first shots. She managed to move from room to room in the house leaving a trail of blood behind her, clearly undergoing fear and pain in the process. Death was not instantaneous. *See* *State v. Blackwelder,* 309 N.C. 410, 306 S.E. 2d 783 (1983). We also reject defendant's argument that there should be some relevance attached to his allegation that he did not intend his victim to suffer or intend that the murder be "vicious." Proof that a defendant intended to inflict unnecessary pain upon his victim is certainly appropriately considered in determining whether an offense is especially cruel. Such proof, however, is not necessary. G.S. § 15A-1340.4(a)(1)f is stated in the disjunctive — "The offense was especially heinous, atrocious, *or* cruel." (Emphasis added.) Thus an equally appropriate focus in determining the existence of this factor is whether the victim suffered unusual physical pain or mental anguish. Here the evidence fully supports a finding that the victim suffered a degree of physical pain and psychological suffering not normally present in every murder. This assignment of error is overruled.

[2]    Defendant contends that the trial judge erred in failing to find in mitigation that defendant was suffering from a mental condition, insufficient to constitute a defense, but significantly reducing his culpability. He points out that in 1967 he was diagnosed as suffering from schizophrenia and he directs our attention to the testimony of Dr. Charles Smith, "an internationally recognized leader in the field of Forensic Psychiatry." He also argues that "[t]he evidence clearly shows as is evidenced by the decision of the jury [in its verdict of second rather than first degree murder] that the acts of the Defendant resulted from 'heat of Passion' in response to other provocation."

The evidence, as gleaned from Dr. Smith's testimony, disclosed that defendant was, in fact, treated in May 1967 for a mental disorder because he was preoccupied with hatred and fear of all "slant eyed people." There was also evidence that in April 1967 defendant was treated at the Orthopedic Department of the Yokosuka Naval Hospital for "moderate bilateral pesplanus" (flat feet) based on a report which stated "Complains frequently and is of no use to command here in RVN"; "Has easiest jobs in company area. Please survey 'EPTP' (either treat or evacuate)." He told Dr. Smith that since returning from Vietnam in 1967, he had been "afraid of other people." He was "afraid of shooting" although he qualified as a rifleman or sharpshooter while in the Marine Corps. His mental problems in 1967 supposedly began following a particularly brutal encounter with the enemy. Although he related this experience to Dr. Smith, reference to it does not appear in the 1967 report.[1]

Upon his return to the United States in 1967, defendant recovered from this acute psychotic episode. However, it was Dr. Smith's belief that defendant was left with a "residual reaction" — a "post traumatic stress disorder" which would affect defendant's "judgment," "perception," "feelings," "awareness" and possibly his "intentions." According to Dr. Smith, the defendant had "a

---

1. At trial defendant testified concerning his Vietnam experience: "Well, we went in certain villages and some tunnels and, say, flushed out the enemy, but after we got in there, instead of really flushing the enemy out we would go and take captives and take it on our own to more or less, I'd say, torture them . . . and we was just doing what the Vietnamese were doing to us, more or less."

reoccurrence of the original traumatic experience, in the context of the dispute with his wife, a marital dispute."

The State argues that, in light of Dr. Rollins's testimony, the evidence was conflicting as to defendant's mental condition. Dr. Rollins, the State's rebuttal witness, testified that defendant did not suffer from post traumatic stress disorder. Rather, defendant had told him "I don't think [combat in Vietnam] affected me that much; I was about the same as before. I got them to pull me out because of my feet. I went to a hospital, and it was a psychiatric hospital, I guess, I don't have any idea."

We do not believe, based on this testimony, that the trial judge was required to find that the defendant proved by a pre-ponderance of evidence that, at the time of the murder, he was suffering from a mental condition as contemplated by G.S. § 1340.4(a)(2)d. The evidence is both conflicting and inconclusive with respect to any connection between the murder and defend-ant's alleged mental problems fifteen years earlier. Finally, we find no merit in defendant's argument that he acted in the "heat of passion," a fact which he contends should have been considered as some evidence of his allegedly impaired mental condition. The jury found the defendant guilty of second degree murder rather than voluntary manslaughter, thereby rejecting defendant's the-ory that he acted in the heat of passion.

[3] Defendant next contends that the trial judge erred in failing to find in mitigation that the defendant acted under strong provo-cation or the relationship between the defendant and the victim was otherwise extenuating. He bases his contention on the fact that there was evidence at trial of the parties' marital difficulties, particularly defendant's belief that his wife was involved with other men. The testimony of the victim's sister and her sister's boyfriend tended to dispel many of defendant's allegations of his wife's infidelity.

The victim's past indiscretions, if in fact they ever took place, may be some evidence of an extenuating relationship between the parties. We decline to hold, however, that a relationship between husband and wife, including marital difficulties in the past, is suf-ficient, standing alone, to support a finding of this mitigating fac-tor. It appears from the Record that defendant's actions on the day of the murder were "provoked" by his learning of her deci-

sion to leave the marital home and by his finding a cigarette butt in an ashtray, ostensibly indicating that someone other than the defendant or his wife had at some point visited the house. This evidence is insufficient to prove by a preponderance of the evidence that defendant acted under *strong* provocation. This assignment of error is overruled.

[4] Finally defendant contends that the trial judge erred in finding that the aggravating factor outweighed the mitigating factors and by imposing a sentence in excess of the presumptive. On this issue it bears repeating that:

> Upon a finding by the preponderance of the evidence that aggravating factors outweigh mitigating factors, the question of whether to increase the sentence above the presumptive term, and if so, to what extent, remains within the trial judge's discretion. *State v. Davis, supra,* 58 N.C. App. 330, 293 S.E. 2d 658 (1982).

> The discretionary task of weighing mitigating and aggravating factors is not a simple matter of mathematics. For example, three factors of one kind do not automatically and of necessity outweigh one factor of another kind. The number of factors found is only one consideration in determining which factors outweigh others. The court may very properly emphasize one factor more than another in a particular case. The balance struck by the trial judge will not be disturbed if there is support in the record for his determination.

*State v. Melton,* 307 N.C. at 380, 298 S.E. 2d at 680.

Here, as in his previous arguments, defendant focuses on the fact that the murder arose out of a domestic dispute "where the victim's lack of love for the Defendant and egregiously unfaithful behavior were thrown in the Defendant's face"; that "the affront to the Defendant's dignity by infidelity, weigh much more closely in the balance with a multiple shot killing"; and that "[d]eath may have resulted from the anger of the struggles not as a specifically intended result."

This evidence, including the possibility that defendant may have murdered his wife in a jealous rage, possibly influenced the jury's decision to find defendant guilty of second rather than first degree murder. We have held, however, that this evidence formed

an insufficient basis upon which to find any factor in mitigation. The trial judge weighed one aggravating factor: that the murder was especially heinous, atrocious, or cruel, against two mitigating factors: that defendant voluntarily acknowledged wrongdoing; and that defendant has been a person of good character. The trial judge did not abuse his discretion in sentencing the defendant to life imprisonment.

No error.