STATE OF NORTH CAROLINA v. EUGENE BRYANT MARLEY

No. 315A87

(Filed 3 February 1988)

1. **Homicide § 24.1 — instructions — inferences of malice and unlawfulness — burden of proving insanity — no unconstitutional mandatory presumption of unlawfulness**

   The trial court's instructions on the inferences of malice and unlawfulness arising from proof beyond a reasonable doubt of the intentional use of a deadly

weapon proximately causing death and on defendant's burden to prove insanity to the satisfaction of the jury did not together create a constitutionally impermissible mandatory rebuttable presumption on the element of unlawfulness, since the defense of insanity is unrelated to the existence or nonexistence of the element of unlawfulness, and placing the burden of persuasion on the insanity issue upon the defendant in a homicide case in no way lessens the State's burden to prove unlawfulness beyond a reasonable doubt and does not shift the burden of persuasion on this element to the defendant.

**2. Criminal Law § 138.21— second degree murder—especially heinous aggravating circumstance**

The evidence supported the trial court's finding of the especially heinous aggravating circumstance for a second degree murder where it showed that defendant shot the victim several times while the victim was fleeing for his life; as the victim fell to his knees, defendant shot him several more times; as the victim lay helpless and prone before him, defendant shot him a sixth time; as defendant continued to fire shot after shot into the victim's helpless body, he cruelly taunted him and indicated his intent to continue shooting until the victim was dead; five of the wounds, although painful, would not have been immediately fatal, and the victim could have remained conscious for some time even after receiving the sixth wound; and the victim was in fear for his life and was conscious that he was being repeatedly shot.

**3. Criminal Law § 138.29— trial for first degree murder—conviction of second degree murder—premeditation and deliberation not proper aggravating factor**

Where a defendant is tried for first degree murder upon the theory of premeditation and deliberation and is found by the jury to be guilty of second degree murder, due process and fundamental fairness preclude the trial court from finding as an aggravating factor for second degree murder that defendant acted with premeditation and deliberation.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a life sentence entered by *Brannon, J.*, at the 19 January 1987 Criminal Session of Superior Court, CHATHAM County, upon defendant's conviction by a jury of second degree murder. Heard in the Supreme Court 12 November 1987.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the state.*

*J. Kirk Osborn, Public Defender, for defendant appellant.*

EXUM, Chief Justice.

Defendant's assignments of error pertain to: (1) whether the trial court's instructions to the jury included a constitutionally impermissible presumption on an essential element of the offense; (2) whether the trial judge erred in finding in aggravation that

State v. Marley

the offense was especially heinous, atrocious or cruel, N.C.G.S. § 15A-1340.4(a)(1)f; and (3) whether there was error in the trial court's finding in aggravation at the sentencing hearing that defendant acted with premeditation and deliberation, defendant having been acquitted by the jury of first degree murder. We find no error in the trial but conclude the trial court erred in finding premeditation and deliberation as an aggravating factor and remand for a new sentencing hearing.

The victim in this case, Wesley Walker, was the stepson of the defendant. At trial the state's evidence showed that on the morning of 3 December 1985, Walker went into a convenience store to purchase fuel for his truck. After Walker left, defendant entered the store, purchased some fuel for his truck and went outside. Shortly thereafter defendant took a .30 caliber M1 carbine gun from the front seat of his truck and walked toward Walker's truck.

As defendant approached Walker's truck, he fired a single shot through the window on the driver's side of the vehicle. Walker escaped through the door on the passenger side and ran away from defendant. Defendant stepped in front of the truck and fired two more shots, felling Walker. Defendant began walking toward Walker and said, "If you want some more, goddamn, I'll give you some more." Walker fell to his knees.

While Walker was on his knees, defendant shouted, "I'll kill you" and "Do you want some more?" Defendant then shot Walker several more times. As Walker lay face down on the ground, defendant shouted, "I'll shoot you in the head. You want one in the head?" Defendant then shot Walker in the back of the neck or head area.

After firing the last shot defendant turned, went back to his truck, placed his gun on the front seat and went inside the store. By that time bystanders had called the police and defendant was apprehended before leaving the vicinity of the store. Numerous people witnessed the incident and testified that defendant was the person who shot and killed Walker under the circumstances described above.

Robert Thompson, a forensic pathologist, testified that Wesley Walker had suffered six gunshot wounds. Five of the wounds,

although painful, would not have been immediately fatal. He testified that, although it was possible that Walker had fallen unconscious after receiving the sixth gunshot wound, it was also possible for a person to suffer such a wound and remain conscious for some time.

Defendant pleaded not guilty by reason of insanity. He presented evidence tending to show that he and his wife had operated a successful trucking business until two or three years before the incident. At that time defendant began exhibiting uncharacteristic behavior. He became lethargic, inattentive to matters of business and personal hygiene and showed a lessened ability to work. He gradually became more disoriented and was unable to keep up a normal work schedule.

Defendant's wife testified that her husband's condition deteriorated so much that she made the decision that he was no longer capable of driving his truck in commerce. She testified that she had notified a dispatcher that defendant was not to be dispatched with a load, but was to be instructed to return home. She also testified that her husband had told her that he had planned to kill Walker for a year and that he had dug a grave behind their home and concealed it.

Dr. Billy Royal, a psychiatrist, testified that defendant, because of a mental disease or deficiency of the mind, did not understand the nature and quality of the act he committed.

In rebuttal, state offered testimony from three expert witnesses. Generally, their testimony was that, while defendant had less than average intelligence and had exhibited symptoms consistent with various organic and mental problems, he had the ability to understand the nature and quality of his act.

I

[1] Defendant first assigns as error a portion of the trial judge's final instructions to the jury. In pertinent part, the jury instructions were as follows:

If the State proves beyond a reasonable doubt that the defendant killed the victim with a deadly weapon or intentionally inflicted a wound upon the victim with a deadly weapon that proximately caused the victim's death, you, the jury,

may infer first that the killing was unlawful, and secondly, that it was done with malice. But you are not compelled to do so. You may consider this along with all of the other facts and circumstances in determining whether the killing was unlawful and whether it was done with malice.

The trial judge also submitted defendant's insanity defense to the jury. In that portion of his instructions the trial judge stated, "sanity or soundness of mind is the natural and normal condition of people. Therefore, everyone is presumed sane until the contrary is made to appear. . . ." The trial judge then instructed the jury that defendant had the burden to prove his insanity to the jury's "satisfaction," saying, "the evidence taken as a whole, must satisfy you not beyond a reasonable doubt but simply satisfy you that the defendant was insane at the time [of] the alleged offense. . . ."

Defendant argues that these instructions, taken together, could have created in the mind of a reasonable juror a constitutionally impermissible "mandatory rebuttable presumption" on the essential element of unlawfulness. This kind of presumption, found to be a violation of the Due Process Clause in *Francis v. Franklin*, 471 U.S. 307, 85 L.Ed. 2d 344 (1985), was described in that case as follows:

A mandatory rebuttable presumption does not remove the presumed element from the case if the State proves the predicate facts, but it nonetheless relieves the State of their affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed element unless the defendant persuades the jury not to make such a finding. A mandatory rebuttable presumption is perhaps less onerous from the defendant's perspective, but it is no less unconstitutional. Our cases make clear that [such] shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause.

471 U.S. at 317, 85 L.Ed. 2d at 355.[1]

---

1. For a fuller discussion of the constitutional limits on presumptions and inferences in criminal prosecutions, see *State v. Reynolds*, 307 N.C. 184, 297 S.E. 2d 532 (1982), and *State v. White*, 300 N.C. 494, 268 S.E. 2d 481 (1980), and decisions of the United States Supreme Court therein cited and discussed.

Defendant argues that because there was no evidence tending to rebut the element of unlawfulness except the evidence of insanity and the jury was instructed that defendant had the burden of persuasion on the insanity issue, reasonable jurors could have construed the instructions, taken as a whole, to mean that they would find unlawfulness unless the defendant persuaded them that the element did not exist.

This argument is grounded on a misunderstanding of the nature of the insanity defense in a homicide case and a superficial reading of the trial court's instructions.

"In the absence of evidence of mitigating or justifying factors all killings accomplished through the intentional use of a deadly weapon are deemed to be malicious and unlawful." *State v. Hankerson*, 288 N.C. 632, 650, 220 S.E. 2d 575, 588 (1975), *rev'd on other grounds*, 432 U.S. 233, 53 L.Ed. 2d 306 (1977). "[A]ll intentional killings are deemed, in law, to be unlawful in the absence of some evidence showing that the killing was excused or justified." *Reynolds*, 307 N.C. at 192, 297 S.E. 2d at 537. In the presence of evidence of heat of passion or self-defense, a jury may be instructed that it is permitted, but not compelled, to infer malice and unlawfulness from the intentional use of a deadly weapon proximately resulting in death. *State v. Simpson*, 303 N.C. 439, 279 S.E. 2d 542 (1981). But, in the presence of evidence of heat of passion and self-defense, the jury must also be instructed that the state must prove beyond a reasonable doubt that defendant did not act in heat of passion and in self-defense in order to prove the existence of malice and unlawfulness, respectively. *Id.* In other words self-defense negates, in law, the element of unlawfulness; and heat of passion, the element of malice.

Insanity does not mitigate, justify, or excuse the commission of a crime. It does not, as a matter of law, negate the element of unlawfulness, or any other discrete element of a homicide. A finding of not guilty by reason of insanity is not the same as an acquittal, nor does it result in defendant's being found guilty of a lesser degree of homicide. It simply means that the defendant is absolved from criminal responsibility for his act and cannot be punished for it. *State v. Swink*, 229 N.C. 123, 47 S.E. 2d 852 (1948). Instead, defendant, upon appropriate findings by the trial court, may be involuntarily committed to a state mental health facility. *See* N.C.G.S. § 15A-1321 (1983).

The defense of insanity is, thus, unrelated to the existence or nonexistence of the element of unlawfulness. To place the burden of persuasion on the insanity issue upon the defendant in a homicide case in no way lessens the state's burden to prove unlawfulness beyond a reasonable doubt, nor does it shift the burden of persuasion on this element to the defendant. Neither could the jury in this case have reasonably understood the trial court's instructions to relieve in any way the state's burden of persuasion on the elements of homicide.

In keeping with the above propositions concerning the nature of the insanity defense, the jury here was instructed that it would not consider the issue of defendant's insanity unless it had first found beyond a reasonable doubt the existence of each element of the homicide. The trial court instructed:

> Now, when there is evidence which tends to show that the defendant was legally insane at the time of the alleged offense, you will consider this evidence only if you find that the State has proved beyond a reasonable doubt each of the things about which I have already instructed you. Even if the State does prove each of those things beyond a reasonable doubt, the defendant would nevertheless be not guilty if he was legally insane at the time of the alleged offense.

Considering the jury instructions as a whole, we conclude that the jury in this case could not have reasonably understood the trial court's instructions to relieve in any way the state's burden of persuasion on the elements of the homicide. Accordingly, we find no merit in this assignment of error.

## II

Defendant's two remaining assignments of error relate to the findings of the trial court at the sentencing hearing. Murder in the second degree is a Class C felony; therefore, the judge sentencing a defendant who is adjudged guilty of this crime must impose a 15-year term of imprisonment unless aggravating or mitigating factors merit imposition of a longer or shorter term. *State v. Melton*, 307 N.C. 370, 298 S.E. 2d 673 (1983). Here, the trial court sentenced defendant to the maximum term of life imprisonment after finding two aggravating and several mitigating factors and after concluding that the aggravating factors outweighed the

mitigating factors. To the trial court's finding of the two aggravating factors defendant assigns error.

## A.

[2] Defendant contends the trial court erred in finding as an aggravating factor that the crime was especially heinous, atrocious or cruel within the meaning of N.C.G.S. § 15A-1340.4(a)(1)f. Defendant maintains this finding is contrary to our precedents on the point. We disagree.

The trial court's finding that this murder is especially heinous is fully supported by our decision in *State v. Watson*, 311 N.C. 252, 316 S.E. 2d 293 (1984). The defendant in *Watson* was convicted of second degree murder of his wife, upon an indictment charging him with first degree murder, and sentenced to life imprisonment. In *Watson* the defendant shot his wife a total of ten times while she fled from room to room within her home. We stated:

> There is ample evidence that the victim was not killed by the first shots. She managed to move from room to room in the house leaving a trail of blood behind her, clearly undergoing fear and pain in the process. Death was not instantaneous.

*Id.* at 255, 316 S.E. 2d at 295. We concluded that the facts supported the trial court's finding of the especially heinous aggravating circumstance, saying:

> We also reject defendant's argument that there should be some relevance attached to his allegation that he did not intend his victim to suffer or intend that the murder be "vicious." Proof that a defendant intended to inflict unnecessary pain upon his victim is certainly appropriately considered in determining whether an offense is especially cruel. Such proof, however, is not necessary. G.S. § 15A-1340.4(a)(1)f is stated in the disjunctive—"The offense was especially heinous, atrocious, *or* cruel." Thus an equally appropriate focus in determining the existence of this factor is whether the victim suffered unusual physical pain or mental anguish. Here the evidence fully supports a finding that the victim suffered a degree of physical pain and psychological suffering not normally present in every murder. . . .

*Id.* at 255, 316 S.E. 2d at 295-96.

The facts now before us are even more compelling in support of this aggravating factor than they were in *Watson*. Here there is not only evidence that the victim actually suffered a degree of physical pain and mental anguish not normally present in every murder, but there is also evidence that the defendant intended that such suffering occur. The state's evidence shows that defendant shot Wesley Walker several times while Walker was fleeing for his life. Then, as Walker fell to his knees, defendant shot him several more times. Finally, as Walker lay helpless and prone before him, defendant shot him a sixth time. All the while, as defendant continued to fire shot after shot into Walker's helpless body, he cruelly taunted him and indicated his intent to continue shooting until Walker was dead. Five of the wounds, although painful, would not have been immediately fatal, and there is evidence that Wesley Walker could have remained conscious for some time even after receiving the sixth gunshot wound. Walker was in fear for his life and was conscious that he was being repeatedly shot.

This evidence clearly supports a finding that defendant suffered a degree of physical and mental pain not normally present in every murder. This assignment of error is overruled.

B.

[3] Defendant next contends that the trial court erred in finding as an aggravating factor that defendant acted with premeditation and deliberation. Defendant argues that the trial court was precluded by considerations of due process from finding this aggravating factor. We agree.

It is well settled that a trial judge can find as an aggravating factor that the killing was done with premeditation and deliberation when a defendant charged with first degree murder *pleads guilty* to second degree murder. *State v. Brewer*, 321 N.C. 284, 362 S.E. 2d 261 (1987); *State v. Daniels*, 319 N.C. 452, 355 S.E. 2d 136 (1987); *State v. Carter*, 318 N.C. 487, 349 S.E. 2d 580 (1986); *State v. Melton*, 307 N.C. 370, 298 S.E. 2d 673 (1983). However, as we noted in *Melton*, that situation is "fundamentally different from one in which a defendant *tried* for murder in the first degree is found guilty of murder in the second degree . . . ." 307

N.C. at 370, 298 S.E. 2d at 673 n.2 (1983) (emphasis in original).[2] The question then is whether, under that circumstance, a trial court can find by the *preponderance of the evidence* that the killing was after premeditation and deliberation and use this finding as an aggravating factor. We conclude not.

When a defendant is tried for first degree murder upon the theory of premeditation and deliberation and is found guilty of murder in the second degree the jury has decided that there is not sufficient evidence to conclude beyond a reasonable doubt that defendant premeditated and deliberated the killing. The conviction of the lesser included offense of second degree murder is an acquittal of the greater offense of first degree murder. *Green v. United States*, 355 U.S. 184, 2 L.Ed. 2d 199 (1957).[3]

An acquittal is the "legal and formal certification of the innocence of a person who has been charged with a crime." Black's Law Dictionary 23 (5th ed. 1979). Once a defendant has been acquitted of a crime he has been "set free or judicially discharged from an accusation; released from . . . a charge or *suspicion* of guilt." *People v. Lyman*, 53 A.D. 470, 473, 65 N.Y.S. 1062, 1065 (1900) (quoting 1 Am. & Eng. Enc. Law (2d ed. p. 573)) (emphasis added). A jury in a criminal case may acquit simply because the state has failed to prove a defendant's guilt beyond a reasonable doubt. However, we cannot enter the inner sanctum of the jury to determine whether it *might* have convicted a defendant had the burden of proof been lower. "The inescapable point is that . . . [the] law requires proof beyond a reasonable doubt in criminal cases as the standard of proof commensurate with the presumption of innocence; a presumption not to be forgotten after the ac-

---

2. We are aware that in *State v. Albert*, 312 N.C. 567, 324 S.E. 2d 233 (1985), the trial court found as an aggravating factor that the murder was premeditated and deliberated upon defendant's conviction of second degree murder. While that case was remanded for a new sentencing hearing on other grounds, the issue presented today was neither briefed nor argued.

3. In *Green* the United States Supreme Court held that a defendant, charged with first degree murder but convicted of second degree murder, received an implied acquittal of the charge of first degree murder. While a defendant's negotiated plea to second degree murder upon a charge of first degree murder may be *tantamount* to an acquittal of the greater offense, there has been no jury determination as to whether the elements of first degree murder have been proven beyond a reasonable doubt; consequently there has been no *actual* acquittal.

quitting jury has left and sentencing has begun." *State v. Cote,* 129 N.H. 358, 530 A. 2d 775 (1987).[4] It is well established that a defendant cannot be convicted of a crime unless the evidence adequately sustains every element of the offense charged. *State v. McCoy,* 303 N.C. 1, 24, 277 S.E. 2d 515, 532 (1981); *State v. Ferguson,* 191 N.C. 668, 670, 132 S.E. 664, 665 (1926).

Due process affords every defendant charged with a crime the presumption of innocence. This presumption

> is an instrument of proof created by the law in favor of one accused, whereby his innocence is established until sufficient evidence is introduced to overcome the proof which the law has created. This presumption on the one hand, supplemented by any other evidence he may adduce and the evidence against him on the other, constitute the elements from which the legal conclusion of his guilt or innocence is to be drawn. . . .

*Coffin v. United States,* 156 U.S. 432, 459, 15 S.Ct. 394, 405 (1895).

To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself.

We conclude that due process and fundamental fairness precluded the trial court from aggravating defendant's second degree murder sentence with the single element—premeditation and deliberation—which, in this case, distinguished first degree murder after the jury had acquitted defendant of first degree murder.

The result is that in defendant's trial we find no error; but the case is remanded for a new sentencing hearing.

---

4. In *Cote* the defendant was tried on eight counts of sexually assaultive behavior. Five of the offenses allegedly occurred at one time and place and three of the offenses allegedly occurred at another time and place. Defendant was acquitted of the first five charges but found guilty of the second three. The trial court sentenced defendant to the maximum sentence for each offense. One of the factors which the trial court considered was the fact that defendant's conduct did not represent an isolated incident. The New Hampshire Supreme Court concluded that the trial court had abused its discretion in aggravating defendant's sentence by considering evidence of charges for which defendant had been acquitted.

No error in the trial.

Remanded for a new sentencing hearing.