*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TODD LOUIS ISON,

        Defendant-Appellant.

UNPUBLISHED
February 25, 2020

No. 343530
Wayne Circuit Court
LC No. 17-006585-01-FC

## ON REMAND

Before: LETICA, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of second-degree murder, MCL 750.317, assault with intent to do great bodily harm (AWIGBH), MCL 750.84, discharging a firearm in or at a building causing injury, MCL 750.234b(3), carrying a dangerous weapon with unlawful intent, MCL 750.226, and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 35 to 70 years' imprisonment for the second-degree murder conviction, 5 to 10 years' imprisonment for the AWIGBH conviction, 7 to 15 years' imprisonment for the discharging a firearm in or at a building causing injury conviction, two to five years' imprisonment for the carrying a dangerous weapon with unlawful intent conviction, and two years' imprisonment for each of the felony-firearm convictions.[1] Defendant appealed, challenging only the reasonableness of his out-of-guidelines sentence. This Court affirmed his sentence.[2] Defendant sought leave to appeal to the Michigan Supreme Court, which, in lieu of granting leave to appeal, vacated our previous opinion and

---

[1] All of the felony-firearm sentences are to be served concurrently with each other, but are to be served before defendant's other sentences.

[2] *People v Ison*, unpublished opinion per curiam of the Court of Appeals, issued August 13, 2019 (Docket No. 343530), vacated and rem'd for reconsideration ___ Mich ___ (2020) (Docket No. 160282).

remanded the case to us for reconsideration of defendant's sentencing challenge in light of *People v Beck*, 504 Mich ___ (2019) (Docket No. 152934). *People v Ison*, ___ Mich ___ (2020) (Docket No. 160282). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a shooting in Detroit that resulted in the death of Joseph Kline. In February 2017, Kline began renting a room at defendant's house at 7262 Navy Street. On June 21, 2017, Amanda Dotson, a friend of defendant's and Kline's, went to defendant's house to visit Kline. Kline and Dotson went upstairs to his bedroom and shut the door. A few minutes after they went into the bedroom, defendant, armed with a shotgun, began banging on the door. Defendant said, "Get the f*** out of my house." Kline responded, "All right, I'll get out, I'll get out." Defendant replied, "You bad piece of s***, get the f*** out of my house." Kline said, "All right, [d]ude, all right, [d]ude, I'm leaving." Defendant then said, "Don't make me shoot your a**." Defendant then pounded on the door hard enough to damage it. Kline called 911 with Dotson's phone. Dotson testified at trial that she had never seen defendant this upset before.

Defendant then fired the shotgun through the closed door. Neither Kline nor Dotson was struck by the first blast. Dotson moved from the bed where she was sitting and hid in the closet after the first shot. Kline also rose from the bed, and said, "Todd, stop, Amanda's here too. I think you shot her, I need to check on her." Defendant then fired the shotgun again, approximately 30 seconds after the first blast. Kline was shot as he stood in front of the dresser by the door. Dotson saw blood everywhere. Kline said, "Oh, you shot me. My arm is blown off–please help me. Todd, please help." Another of defendant's tenants came into the room and kept pressure on the wound as Dotson spoke to the 911 operator. Kline later died in the hospital as a result of shotgun pellets that had penetrated his right arm and struck his internal organs, including his liver.

Dotson identified defendant as the shooter. A recording of the 911 call was entered into evidence and played for the jury. Defendant testified at trial that Kline used crack cocaine and had repeatedly menaced him with a knife in the past, and that he believed that Kline and another person were planning to shoot him that day. He also believed he had heard a gun cock on the other side of Kline's door, which was why he took a shotgun with him to demand that Kline leave the house. Defendant testified that his first shot was a "warning shot," and that after the first shot he could not hear anything that anyone inside Kline's room was saying. According to defendant, the second shot was an unintentional "accidental shot" that occurred while defendant was "racking" the gun to clear the empty shell from the first shot. Defendant admitted on cross examination that he knew that Kline was in his room with "some street girl."

The jury convicted defendant as described. At sentencing, the trial court noted that it had reviewed all the available evidence, including the 911 call. It then imposed a minimum sentence for defendant's second-degree murder conviction that was above the range recommended by the sentencing guidelines, stating:

> I did have an opportunity to take a lot of notes during the trial, listen to the 911 call and give this a lot of thought. Frankly, I'm a little taken aback by -- I was taken aback by [defendant's] testimony and then by the statements made in the presentence report that he didn't know the woman was in the room when clearly you hear the 911 call, you hear a man pleading for [defendant] not to shoot. And

-2-

[defendant] shoots a weapon that dispels, what is it, nine pellets? And what was interesting when you look at the particular case -- and the complainant actually stating, you know, Amanda's hiding, and I thought she [sic] said Amanda's hiding in the closet or something like that. And the path that these bullets are taking aren't [sic] straight in, but they actually appear to be aimed in a direction towards the closet. And there's a period of at least 20 -- I know [the prosecutor] indicated it was 25 seconds between the first shot and the second shot, and I simply don't believe anything your client stated because it was contrary to the evidence that was admitted. And rarely do we have a 911 call that places everything there and puts everything, really, in context. We're generally left to guess what happened.

There is no guessing here. When you look at the door and you see that he was hitting that door so hard to cause damage to the door, and then proceeded to shoot through the door not once but twice with a gun, once again, that with every shot fired nine pellets; 18 pellets went into that room. I just -- he took the stand and testified and I thought that based on his testimony manslaughter was an option in terms, but I didn't think it was -- I would have been shocked had the jury come back on it. And, frankly, I am a bit surprised that they came back with second[-]degree murder based on the 911 call in and of itself.

While I do understand that [defendant] has lived a fairly crime-free life, his actions on that day doesn't [sic] excuse the crime-free life he lived -- the crime-free life before does not excuse his actions on that day.

So I'm certainly not going to go to the bottom of the guidelines. The guidelines themselves as everyone's aware now are discretionary. And, frankly, I don't think the top of the guideline is even appropriate.

This appeal followed. On appeal, defendant challenges only the reasonableness of his sentence for second-degree murder.

## II. STANDARD OF REVIEW

This Court reviews for reasonableness a sentence outside the applicable sentencing guidelines range. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). We review the reasonableness of an imposed sentence by reviewing whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 477; 902 NW2d 327 (2017).

## III. ANALYSIS

Defendant argues that the out-of-guidelines sentence[3] the trial court imposed for second-degree murder was unreasonable and disproportionate. We disagree.

As our Supreme Court has explained, the essential question in evaluating an out-of-guidelines sentence " 'is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 472, quoting *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). Further, when a trial court imposes a sentence outside the applicable sentencing guidelines range, it need only provide "adequate reasons for the extent of the departure sentence imposed." *Steanhouse*, 500 Mich at 476. Our Supreme Court has cautioned us that the principal of proportionality does not require a trial court to "sentence defendants with mathematical certainty." *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). "Nor are any precise words necessary" for a trial court to justify a particular departure; rather, the trial court's reasoning must be "sufficiently detailed to facilitate appellate review." *Id*. Relevant factors for determining whether an out-of-guidelines sentence is proportionate, and therefore reasonable, include: (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight. *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017).

Defendant's minimum sentencing guidelines range was 225-375 months (i.e., 18.75-31.25 years). The trial court sentenced defendant to a minimum prison term of 420 months (i.e., 35 years), exceeding the high end of the guidelines range by 45 months (i.e., 3.75 years). We conclude that this sentence was proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse*, 500 Mich at 474.

Contrary to defendant's claim that "nothing in [his] background supports the conclusion that this severe departure sentence was more proportionate than a sentence within the guidelines," the record shows that defendant fatally shot Kline without provocation because he wanted him to leave his house, and that defendant did so after Kline said that he would leave. Defendant used a shotgun to shoot twice through Kline's closed bedroom door with Kline and Dotson inside the room. Kline and Dotson were trapped in the room. The 911 call recorded defendant hitting Kline's door. Defendant fired the shotgun through the closed door, paused for about 30 seconds, and fired again. Kline can be heard on the 911 recording telling defendant that he was leaving; yet, shortly after, defendant fired for a second time. Kline can be heard yelling on the 911 call that he was

---

[3] Historically, minimum sentences that exceeded the range of sentences recommended by the sentencing guidelines have been referred to as "departure sentences." In light of the fact that the sentencing guidelines are now advisory (although still relevant to a trial court's sentencing determination), we refer to the challenged sentence as an "out of guidelines sentence" because the framework for reviewing such sentences post-*Lockridge* differs significantly from that which existed when the sentencing guidelines were mandatory. See *People v Lampe*, 327 Mich App 104, 133; 933 NW2d 314 (2019) (BOONSTRA, J., concurring); see also *People v Odom*, 327 Mich App 297, 301-303 and passim; 933 NW2d 719 (2019) referring to the defendant's sentence as an "out-of-guidelines sentence").

shot, and begging for help. Defendant admitted that he knew at least two people were in the room before firing into the room.

The trial court considered the seriousness of the circumstances surrounding the offense and found the sentence to be proportionate to the seriousness of the matter. *Id*. at 475. The court noted that the presentence investigation report contained statements from the defendant to the effect that he did not know that Dotson was in the room, but found that defendant's statements were not credible. It also noted that Kline could be heard "pleading" for defendant not to shoot. We conclude the trial court did not abuse its discretion by determining that an out-of-guidelines sentence was warranted in this case. *Lockridge*, 498 Mich at 392.

Nor did the trial court run afoul of *Beck*. Our Supreme Court held in *Beck* that when a defendant is acquitted of a crime, a trial court may not use an essential element of the acquitted offense as an aggravating factor. *Beck*, 504 Mich at ___ (Docket No. 152934, slip op at 18-19) Still, "[a] sentencing court is allowed to consider the facts underlying uncharged offenses, pending charges, and acquittals." *People v Coulter*, 205 Mich App 453, 456; 517 NW2d 827 (1994). A trial judge can consider conduct underlying an acquittal as an aggravating factor without turning that consideration into an independent finding of guilt. *People v Shavers*, 448 Mich 389, 393; 531 NW2d 165 (1995). And, "although a trial court may not make an independent finding of guilt with respect to a crime for which a defendant has been acquitted, and then sentence the defendant on the basis of that finding, the court in fashioning an appropriate sentence may consider the evidence offered at trial[.]" *People v Compagnari*, 233 Mich App 233, 236; 590 NW2d 302 (1998) (citation omitted). Such evidence may include "other criminal activities established even though the defendant was acquitted of the charges[.]" *Id*. (citation omitted).

In *Beck*, the defendant had been acquitted of the charge of second-degree murder and convicted only of firearm possession charges, yet the trial court imposed an out-of-guidelines sentence based on its finding by a preponderance of the evidence that the defendant had committed the murder of which the jury had acquitted him. *Beck*, 504 Mich at ___ (Docket No. 152934, slip op at 3). Our Supreme Court, in finding that the trial court's conduct violated due process, stated:

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. "To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." [*State v*] *Marley*, 321 NC [415,] at 425[; 364 SE2d 133 (1988)].

> Unlike the uncharged conduct in [*McMillan v Pennsylvania*, 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986)], conduct that is protected by the presumption of innocence may not be evaluated using the preponderance-of-the-evidence standard without violating due process. [*Beck*, 504 Mich at ___ (Docket No. 152934, slip op at 18-19 [footnotes omitted]).]

-5-

In contrast, the trial court in this case did not make an independent finding that defendant had committed first-degree murder. Although the court expressed surprise that the jury had returned a verdict of second-degree murder, it did not state that its out-of-guidelines sentence was based on a belief that first-degree murder was a more appropriate conviction; indeed, when defense counsel inquired whether the trial court was exceeding the guidelines range "because [it] . . . felt like this was a murder in the first degree," the court responded by noting that it was exceeding the guidelines because defendant had lied in court and in his statement for use in the PSIR.

Moreover, although the jury did not convict defendant of first-degree murder, we do not read *Beck* as precluding a trial court from considering record evidence that supports an out-of-guidelines sentence merely because it might also have supported a conviction on a charge on which a defendant was acquitted. In other words, even if the trial court in this case considered evidence that *could have* supported the premeditation element of a first-degree murder charge, it was not precluded from considering that evidence; it was only precluded from concluding that defendant had in fact committed first-degree murder and basing its sentence on that conclusion. [See *Beck*, 504 Mich at ___ (Docket No. 152934, slip op at 18-19) (stating that a trial court is forbidden from relying on conduct when "a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged" in that conduct).] Therefore, the trial court was not prohibited from considering such factors as the fact that defendant could hear Kline pleading through the door, or that defendant waited between firing the first and second shots, as factors supporting an out-of-guidelines sentence, merely because those factors also could have supported a finding of premeditation. See *People v Sabin* (*After Remand*), 463 Mich 43, 56; 614 NW2d 888 (2000) (noting that relevant evidence may be considered for a proper purpose notwithstanding that its use for a different purpose is precluded).

Defendant also contends that "the trial court did not adequately explain why a minimum sentence of 35 years was more proportionate than a different sentence within the guidelines would have been other than" that it was surprised that the jury convicted defendant of second-degree murder. Again, "no precise words" are necessary for a trial court to justify the length of a particular out-of-guidelines sentence. Moreover, we conclude that in the post-*Lockridge* era, a trial court must articulate why the sentence it is imposing (and therefore, necessarily, the extent of that sentence) is justified, but that it need not engage in a formulaic or mathematical analysis of why a sentence of "x" months is more justified than a sentence of "y" months. The trial court adequately explained that its sentence was based, in part, on the fact that it believed that defendant had lied, that defendant had knowledge that at least two people were in the room before he fired, and that defendant waited after firing the first shot and then fired again despite Kline saying he would leave and telling defendant that he may have shot Dotson. We conclude that the sentence imposed by the trial court was reasonable. *Id*. The trial court did not abuse its discretion or violate the principle of proportionality when it sentenced defendant above the sentencing guidelines range. *Id*.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark T. Boonstra

-6-